796 P.2d 599

**James R. GRANTLAND and Betty Grantland, husband and wife, Petitioners,**

v.

**LEA REGIONAL HOSPITAL, INC., Respondent.**

No. 19230.

Supreme Court of New Mexico.

Aug. 23, 1990.

Gary C. Mitchell, Ruidoso, for petitioners.

Atwood, Malone, Mann & Turner, Rod M. Schumacher, Roswell, for respondent.

OPINION

WILSON, Justice.

Defendant-respondent Lea Regional Hospital, Inc. (Regional) filed a motion in district court to dismiss the medical malpractice complaint of plaintiffs-petitioners James R. and Betty Grantland (Grantlands) on the basis that the statute of limitations barred their recovery. When the district court denied Regional's motion, Regional filed an interlocutory appeal to the court of appeals. The court of appeals reversed the district court. We granted certiorari and now reverse the court of appeals.

Pursuant to the Medical Malpractice Act, NMSA 1978, Sections 41–5–1 to –28 (Repl. Pamp.1989) (the Act), on May 14, 1986, Grantlands filed an application with the New Mexico medical review commission (the commission) requesting consideration of their claim of medical malpractice against Regional. Grantlands alleged that Regional committed medical malpractice in the care and treatment of James R. Grantland from mid-June through July 1983. In September 1986, Grantlands made further inquiry of the commission as to Regional's

status as a qualified health care provider. On October 8, 1986, the commission advised Grantlands that Regional had not contributed to the patient's compensation fund and therefore was not a qualified health care provider under the Medical Malpractice Act.

In the meantime, on September 12, 1986, Grantlands filed a medical malpractice complaint against Regional in district court. The district court found that Grantlands did not know or have reason to know that Regional was not a qualified health care provider for the purposes of the Act, and even though the Grantlands' complaint was filed in district court more than three years after the date of the alleged malpractice, it was not barred by the statute of limitations as a matter of law.

The single issue in this case is whether the filing of a medical malpractice application with the New Mexico medical review commission tolls the statute of limitations as to nonqualified health care providers.

In 1976, the New Mexico legislature created a medical review commission to review all medical malpractice claims against "health care providers covered by the Medical Malpractice Act." § 41–5–14(A). *See generally* Kovnat, *Medical Malpractice Legislation in New Mexico,* 7 N.M.L.Rev. 5 (1976–77). The intent of the Act is to prevent the filing of nonmeritorious malpractice lawsuits. *Otero v. Zouhar,* 102 N.M. 482, 697 P.2d 482 (1985). To facilitate this purpose, the Act provides that prior to filing a complaint in any court against a "qualifying health care provider," the claimant must submit an application to the medical review commission. § 41–5–15(A). Upon receipt of an application a panel is selected, § 41–5–17, and after consideration of all relevant material, the panel decides only two questions, namely, "(1) whether there is substantial evidence that the acts complained of occurred and that they constitute malpractice; and (2) whether there is a reasonable medical probability that the patient was injured thereby." § 41–5–20. Submission of a case for the consideration of the panel tolls the statute of limitations period until thirty days after the panel's

final decision is entered in the permanent files of the commission and a copy is served upon the claimant and his attorney by certified mail. § 41–5–22.

In its opinion the court of appeals relies upon *Otero v. Zouhar,* 102 N.M. 482, 697 P.2d 482 (1985). A comprehensive reading of this case convinces us that claimants who make a good-faith attempt to comply with the Medical Malpractice Act should not be deprived of their day in court by placing form above substance. As stated in *Zouhar:*

> We see no justice in strictly applying the Act now to void the complaint filed and thus circumvent the tolling provision of the Act that would have applied to save [claimant's] cause of action if the trial court's ruling and the time consumed in appellate proceedings had not intervened. Such "Catch–22's" are procedural anomalies that do not deserve perpetuation.

102 N.M. at 485, 697 P.2d at 485.

Similarly, in *Jiron v. Mahlab,* 99 N.M. 425, 659 P.2d 311 (1983) we allowed the claimants to circumvent Section 41–5–15(A) and file their medical malpractice complaint in district court before applying for the commission's review in order to protect their constitutional right of access to the courts. In that case we said: "The institution of the Medical Review Commission as a forum for screening medical malpractice claims appears to work well in most instances. Nevertheless, when a statute or rule operates to deprive an individual of a protected right, it may be held constitutionally invalid as applied to that individual." 99 N.M. at 426, 659 P.2d at 312.

Like the claimants in *Zouhar* and *Jiron,* Grantlands are in a "Catch–22" position. Had Grantlands filed a complaint in district court and then discovered after the statute of limitations had run that Regional was a qualified health care provider, strict adherence to the Act would eliminate Grantlands' chance of recovery. In this case the opposite situation occurred: Grantlands filed an application with the commission and before they were notified that Regional was not a qualified health care provider, the statute of limitations barred their filing

in district court. We cannot accept this result. If we require claimants to file in district court at the peril of losing their case before the classification of the health care provider is known, then every claim will be filed in district court as a safety precaution, and the purpose behind the Act (to prevent court filing of nonmeritorious malpractice claims) will be defeated. The medical profession likely will suffer the ill effects of their members being accused publicly, and perhaps unjustly, of malpractice, the cost of health care may escalate as medical malpractice insurance premiums reflect the number of medical malpractice cases being filed in the courts, and the courts will be burdened with premature and frivolous medical malpractice claims.

We hold that Section 41–5–22, which tolls the statute of limitations period upon submission of a case to the commission, should be enforced according to its terms whether the commission's determination is that the health care provider is not qualified and the claim is consequently rejected, or whether the commission determines that the health care provider is qualified and the claim is resolved on its merits. To the extent that *Otero v. Zouhar* holds Section 41–5–22 inapplicable to nonqualified health care providers, it is overruled.

The court of appeals is reversed, and the district court is affirmed with directions to proceed in a manner consistent with this opinion.

IT IS SO ORDERED.

RANSOM, BACA and MONTGOMERY, JJ., concur.

SOSA, C.J., dissents.

SOSA, Chief Justice (dissenting).

I respectfully dissent. I agree with the court of appeals that the hospital's motion to dismiss should be granted on the basis that the filing of the complaint after the statute of limitations period expired barred recovery.

Section 41–5–13 of the Medical Malpractice Act, NMSA 1978, Sections 41–5–1 through –28 (Repl.Pamp.1989 & Cum.Supp. 1990), is controlling as to whether any

medical malpractice action has been timely filed. *Armijo v. Tandysh*, 98 N.M. 181, 646 P.2d 1245 (Ct.App.1981), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 377, 74 L.Ed.2d 510 (1982). The three-year limitations period under Section 41–5–13 begins to run from the date of the alleged act of malpractice, but, upon submission of the case to the medical review panel, the limitations period is tolled and shall not commence to run again until thirty days after the panel's final decision is entered and the claimant is notified. *See* § 41–5–22. However, in *Otero v. Zouhar*, 102 N.M. 482, 697 P.2d 482 (1985), this court, while reaffirming its exclusive constitutional power to regulate all pleading, practice and procedure affecting the judicial branch, held:

> *Submission of an application to the medical review commission* tolls the statute of limitations, as to that particular *"qualified"* defendant, until 30 days after the commission has entered its decision, § 41–1–22, but it *has no effect on tolling the statute of limitations applicable to any "non-qualified" health provider * * *.*

*Id.* at 484, 697 P.2d at 484 (emphasis added).

The facts in the present case are distinguishable from those presented in *Otero v. Zouhar*. There the patient initially contacted the superintendent of insurance regarding the status of the health care providers he intended to sue, but received inaccurate information about their status. He was advised at the time he filed suit in district court that two of the providers were non-qualifying when in fact they were qualified. There was no dispute that the third provider was qualified. The patient was faced with the dilemma of observing the joinder requirement and filing suit against all three providers before the limitations period expired in order to preserve his cause of action against the non-qualified parties, and, at the same time, violating the mandate in Section 41–5–15(A), which prohibits the filing of a malpractice action against a qualified provider before submitting an application for medical review.

This court excused the untimely filing of the complaint and ruled that the patient was entitled to rely upon the information from the superintendent of insurance. The court also ruled that, while the district court's dismissal with prejudice procedurally was infirm, its ruling to stay the proceedings until the commission had considered the matter acted to allow review, preserve the complaint, and obviate the necessity of refiling or obtaining an order to reinstate the complaint following the commission's decision. The concern recognized in *Otero v. Zouhar* was that "[p]laintiffs should not be denied their day in court because of incorrect rulings [by the trial court] and attendant delays incurred by appellate procedures." 102 N.M. at 485, 697 P.2d at 485. The court suggested that each case should be decided on the individual circumstances so as not to "improperly elevate procedural considerations over plaintiff's constitutional right to petition for redress of grievance." *Id.* at 486, 697 P.2d at 486. The present case displays none of these concerns nor prejudice to the Grantlands as the result of some procedural anomaly. *See Jiron v. Mahlab,* 99 N.M. 425, 659 P.2d 311 (1983) (where requirement of Act causes undue delay prejudicing plaintiff, right of access to courts is unconstitutionally deprived).

Section 41–5–5 establishes qualifications to be covered under the Act and provides that *non-qualifying* health care providers shall not benefit from any provision of the Act in the event of malpractice claims against them. Section 41–5–15(A) specifies that "[n]o malpractice action may be filed in any court against a *qualifying* health care provider before application is made to the medical review commission and its decision is rendered." (Emphasis added.) Both provisions suggest to a potential plaintiff that an initial inquiry is necessary to ascertain the status of the health care provider involved. These provisions along with the relevant case law place a potential plaintiff on notice that the manner in which to commence an action may differ depending upon the status of the health care provider. It is incumbent upon a potential plaintiff to determine the status of a health care provider against whom they intend to allege a medical malpractice claim. This determination can be accomplished without diminishing the risk of compromise to one's constitutional right of access to the courts.

The Grantlands allege that medical malpractice was committed during the period from mid-June to the end of July 1983. An application for medical review was filed on May 14, 1986, and a complaint was filed in district court on September 12, 1986. The record indicates that the Grantlands were notified by the commission of its decision in October 1986.

Unlike the plaintiff in *Otero v. Zouhar,* the Grantlands did not contact the superintendent of insurance regarding the status of the hospital. Instead they chose to file an application with the medical review commission very near the expiration of the limitations period. In the event the Grantlands were uncertain about the proper course of action, they could have filed their application with the commission and also filed a complaint in district court to protect their claim without compromising the limitations period and winding up in a procedural Catch 22 position. *See Jiron v. Mahlab,* 99 N.M. 425, 659 P.2d 311 (supreme court approved plaintiff's filing his complaint in district court before applying for review by medical review commission because unbending adherence to timing requirements would likely have eliminated his right of action). This type of "safety precaution" necessarily would not defeat a primary purpose of the Act to prevent nonmeritorious claims from being filed nor open the flood gates to "premature and frivolous medical malpractice claims."

Accordingly, I would not overrule any part of *Otero v. Zouhar,* and would quash the writ of certiorari as improvidently granted.