837 P.2d 442

**Patricia ROBERTS, Petitioner,**

v.

**SOUTHWEST COMMUNITY HEALTH
SERVICES, Respondent.**

**No. 19905.**

Supreme Court of New Mexico.

July 14, 1992.

Gutierrez Law Offices, Avelino V. Gutierrez, Law Office of Damon B. Ely, Daymon B. Ely, Michael B. Browde, Albuquerque, for petitioner.

Rodey, Dickason, Sloan, Akin & Robb, W. Robert Lasater, Susan S. Throckmorton, Charles K. Purcell, Albuquerque, for respondent.

Atwood, Malone, Mann & Turner, P.A., Rod M. Schumacher, Roswell, amicus curiae New Mexico, Defense Lawyers Ass'n.

## OPINION

BACA, Justice.

This appeal arises from a medical malpractice claim brought by petitioner Patricia Roberts against respondent Southwest Community Health Services ("SCHS"). The trial court granted a summary judgment motion in favor of SCHS after determining that petitioner's claim was barred by the relevant statute of limitations. Petitioner appealed the summary judgment to the Court of Appeals, which affirmed in an unpublished opinion. We granted certiorari and address two related issues: (1) Whether a distinction between qualified and nonqualified health care providers should be made for the purpose of applying the Medical Malpractice Act's statute of limitations; and (2) if so, whether the statute of limitations for a personal injury caused by the medical malpractice of a nonqualified health care provider accrues at the time of the negligent act or when the plaintiff discovers her injury and its cause. Because we find that a distinction does exist, we reverse and remand to the trial court.

### I

For purposes of this appeal, the relevant facts are as follows. On November 9, 1984, petitioner underwent surgery at Presbyterian Hospital, a hospital owned by SCHS. Over the next four years, petitioner suffered from discomfort and medical problems in her abdomen. In January of 1989, petitioner learned that a sponge had been left in her abdomen during the 1984 surgery and had the sponge removed.

On April 9, 1990, petitioner filed a complaint for medical negligence that alleged that Drs. Fisk and Smith, the surgeons who had performed the surgery, and the nurses employed by SCHS had negligently failed to remove the sponge from petitioner during the 1984 operation. The complaint alleged that Dr. Fahy, a radiologist, was negligent in failing to discover the sponge. The complaint also alleged that the health care providers had fraudulently concealed the fact of the negligence. The complaint joined SCHS under the theory of respondeat superior.

Drs. Fisk and Smith, who were both qualified health care providers under the Medical Malpractice Act, NMSA 1978, Sections 41–5–1 through –28 (Repl.Pamp.1989 & Cum.Supp.1992) (the "Act"), made a motion for summary judgment, asserting that petitioner's claim was barred by the statute of limitations, Section 41–5–13. Although it was not a qualified health care provider, SCHS also moved for summary judgment based on the three year statute of limitations in Section 41–5–13. The trial court granted the summary judgment motions of Dr. Smith and SCHS and dismissed Smith, SCHS, and all of the employees of SCHS with prejudice. The trial court, however, found that questions of fact regarding the allegation of fraudulent concealment against Fisk remained and that summary judgment as to Fisk was therefore not appropriate.

Petitioner, Fisk, Smith, and Fahy made a subsequent joint motion to dismiss the complaint with prejudice as to those parties. Petitioner filed a timely appeal of the summary judgment in favor of SCHS and, in an unpublished opinion, the Court of Appeals affirmed, holding that the statute of limitations is not a "benefit" of the Act and that the claim accrued at the time of the wrongful act causing injury. Because of an apparent conflict in the case law, we accepted petitioner's application for certiorari. We reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

### II

In 1976, in response to a perceived medical malpractice insurance crisis, the legislature passed the Medical Malpractice Act.[1]

---

1. Ruth L. Kovnat, *Medical Malpractice Legislation in New Mexico,* 7 N.M.L.Rev. 5, 7 (1976– 1977). For a general discussion of the Act, *see id.* at 17–34.

The Act establishes medical malpractice liability coverage, Section 41–5–25, and, in addition, provides other benefits to those providers who choose to become qualified in accordance with Section 41–5–5(A). Section 41–5–5(C) of the Act specifically limits its benefits to those health care providers who accept the burdens of qualification.[2]

Prior to passage of the Act, we held that the statute of limitations in a medical malpractice action begins to run at the time of the negligent act that causes injury. *Roybal v. White*, 72 N.M. 285, 383 P.2d 250 (1963). However, in a case that arose before the passage of the Act but that was decided after passage of the Act, the Court of Appeals held that the statute of limitations in a medical malpractice case begins to run not at the time of the negligent act but rather at the time that the plaintiff suffers injury. *Peralta v. Martinez*, 90 N.M. 391, 564 P.2d 194 (Ct.App.), *cert. denied*, 90 N.M. 636, 567 P.2d 485 (1977). According to the *Peralta* court, "the limitation period begins to run from the time the injury manifests itself in a physically objective manner *and* is ascertainable." *Id.* at 394, 564 P.2d at 197. Thus, for cases that arose prior to the passage of the Act or that are not governed by the limitations provisions of the Act, the judicial interpretations of the statute of limitations are conflicting.[3]

For those actions that are governed by the limitations provisions of the Act, the statute of limitations begins to run on the date that the malpractice occurred and expires three years from that date. Section 41–5–13. In a case interpreting this statute of limitations, *Armijo v. Tandysh*, 98 N.M. 181, 646 P.2d 1245 (Ct.App.1981), *cert. quashed*, 98 N.M. 336, 648 P.2d 794, *cert. denied*, 459 U.S. 1016, 103 S.Ct. 377, 74 L.Ed.2d 510 (1982), the Court of Appeals held that, because the Act codified the common law rule of *Roybal*, the statute of limitations of the Act was not a "benefit" of the Act and, as such, was equally applicable to qualified and nonqualified health care providers. We granted certiorari in this case to decide whether the statute of limitations under the Medical Malpractice Act applies to nonqualified health care providers and, if not, to clarify when a personal injury cause of action for medical malpractice against a nonqualified health care provider accrues.

### III

■ Contrary to the Court of Appeals' opinion in *Armijo*, petitioner contends that the Act differentiates between "qualified health care providers" and "nonqualified health care providers" because only health care providers meeting the Act's qualifications, Section 41–5–5(A), may claim the benefits of the Act, Section 41–5–5(C). Petitioner argues that the statute of limitations, Section 41–5–13, is a "benefit" of the Act because it bars any medical malpractice claims against qualified health care providers arising three years after the act of malpractice, whether or not such claims are discoverable. Petitioner contends that the statute of limitations for personal injury, NMSA 1978, Section 37–1–8 (Repl.Pamp.1990), is applicable to malpractice claims against a nonqualified health care provider, such as SCHS. Petitioner claims that there is a conflict in the case law interpreting when a personal injury cause of action arising from medical malpractice against nonqualified health care providers accrues. As discussed above, *Roybal* held that a personal injury claim accrues at the time of the negligent act. 72 N.M. at 287, 383 P.2d at 252. However, the Court of Appeals, in a pre-Act case, held that the cause of action accrues at the time of the injury. *Peralta*, 90 N.M. at

---

**2.** The relevant portion of the statute reads:

C. A health care provider not qualifying under this section shall not have the benefit of any of the provisions of the Medical Malpractice Act in the event of a malpractice claim against it.

NMSA 1978, § 41–5–5(C).

**3.** One commentator has explained that a medical malpractice cause of action could accrue at one of three distinct times: "when the wrongful act occurred, when the pain was first felt, or when the cause of the pain and, consequently, the wrongful act were discovered." Ron Horn, Note, *The Statute of Limitations in Medical Malpractice Actions*, 6 N.M.L.Rev. 271, 272 (1976).

393, 564 P.2d at 196 (criticizing *Roybal*). Petitioner asks us to reconsider *Roybal*, overrule *Armijo*, and adopt the rule from *Peralta*, *i.e.*, that the cause of action accrues at the time of the injury.

Not surprisingly, SCHS claims that the Act's three year statute of limitations applies to all health care providers, whether they are "qualified" or "nonqualified." Amicus Curiae, aligned with SCHS, cites language from the Act's statute of limitations to support this contention: "No claim for malpractice * * * may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred * * *." Section 41–5–13. Amicus argues that the legislature's omission of the word "qualified" from this provision indicates that the legislature intended all health care providers to receive the benefit of its protection. Citing *Armijo*, 98 N.M. at 184, 646 P.2d at 1248, Amicus also contends that the Act merely codified the existing common law rule of *Roybal* that the cause of action accrues at the time of the wrongful act. SCHS and Amicus argue that the Act's statute of limitations cannot be considered as a "benefit" to qualified health care providers and, consequently, the statute of limitations contained in the Act applies equally to qualified and nonqualified health care providers.

### A

In *Armijo*, the Court of Appeals considered due process and equal protection challenges to the validity of the statute of limitations under the Act. 98 N.M. at 183–84, 646 P.2d at 1247–48. The plaintiff in *Armijo*, as personal representative of decedent's estate, alleged that the physician-defendant's malpractice had caused decedent's death, which occurred several months after the alleged negligent act. The plaintiff filed his complaint more than three years after the date of the alleged wrongful act but prior to three years after decedent's death. Thus, if the Act's statute of limitations for medical malpractice applied, the claim would be barred; if, however, the wrongful death statute of limitations applied, plaintiff's claim would not

have been barred. *Id.* at 183, 686 P.2d at 1247. The plaintiff argued that the statutory schemes violated equal protection because they established different statutes of limitations for qualified and nonqualified health care providers. The *Armijo* court disagreed, reasoning that because the statute merely codified the existing common law rule of *Roybal*, the Act's statute of limitations could not be considered as a "benefit." "There being no distinction, for limitation of action purposes, between qualified and non-qualified health care providers, there is no basis for this equal protection argument." *Id.* at 184, 646 P.2d at 1248.

Whether such a distinction can be drawn is a matter of statutory construction. In construing a statute, our primary focus is to ascertain and give effect to the intent of the legislature. *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). Our interpretation of legislative intent comes primarily from the language used by the legislature, and we will consider the ordinary meaning of such language unless a different intent is clearly expressed. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985). Statutes should be construed so as to facilitate their operation and the achievement of the goals as specified by the legislature. *Miller v. New Mexico Dep't of Transp.*, 106 N.M. 253, 255, 741 P.2d 1374, 1376 (1987). We must "read the act in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Klineline*, 106 N.M. at 735, 749 P.2d at 1114. In construing an act as a whole, we will give effect to each portion of the statute, if possible. *Methola v. County of Eddy*, 95 N.M. 329, 333, 622 P.2d 234, 238 (1980).

The Act was enacted by the legislature in response to a perceived medical malpractice insurance crisis in New Mexico. Kovnat, *supra* note 1, at 7. The purpose of the Act is to "promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico."

Section 41–5–2. To achieve this goal, the legislature offered health care providers "benefits" such as malpractice liability coverage, Section 41–5–25; limitations of malpractice awards, Section 41–5–6; limitations of personal liability of health care providers for future medical expenses, Section 41–5–7; and a mandatory procedure for reviewing medical malpractice claims before such claims can be brought in a district court, Sections 41–5–14 to –21. However, the legislature conditioned a health care provider's entitlement to these "benefits" on meeting the qualifications of the Act. Section 41–5–5(A). The Act specifically denies any of its benefits to those who do not qualify. Section 41–5–5(C). Thus, the legislature encouraged health care providers to become qualified by accepting the burdens of qualification, and offered certain benefits in return.

SCHS argues that we must construe the term "benefit" as the legislature understood that term when the statute was enacted. *Wellborn Paint Mfg. Co. v. New Mexico Employment Sec. Dep't*, 101 N.M. 534, 537, 685 P.2d 389, 392 (Ct.App.1984). SCHS contends that because the legislature merely codified the common law rule of *Roybal* it did not intend to confer a benefit on qualified health care providers. While we agree with SCHS that the statute of limitations of the Act arguably codified the common law rule of *Roybal*, we must disagree with SCHS that, by codifying the *Roybal* rule, the legislature did not intend to confer a "benefit" on qualified health care providers. This argument assumes that, in "merely codifying" the *Roybal* rule, the legislature mechanistically enacted the common law and, thus, did not confer a benefit on qualified health care providers. We believe that it is equally plausible that the legislature, in response to the perceived medical malpractice crisis, chose the time of the negligent act rule specifically to confer its benefit on qualified health care providers. Moreover, we cannot blithely assume that the legislature was not aware that the time of the negligent act rule had been under what had been characterized as a "constant intellectual bombardment." *Ruth v. Dight*, 75 Wash.2d 660, 453 P.2d 631, 634 (1969) (en banc). The *Ruth* court cited twenty-three cases, dating back as far as 1934, adopting the discovery rule. *Id.* 453 P.2d at 636. Thus, at the time that the legislature considered the Act, the bombardment was in full tilt. Surely, in considering such wideranging legislation as the Act, the legislature must have canvassed the current trends in malpractice law. By codifying the *Roybal* rule, we believe that the legislature specifically chose to insulate qualified health care providers from the much greater liability exposure that would flow from a discovery-based accrual date.

■ SCHS also argues that the "benefits" of the Act are only those "benefits" for which the qualified health care provider paid by underwriting the Patient's Compensation Fund. As SCHS recognizes, however, the Act established "new procedural and substantive restrictions on malpractice liability." One of the "procedural restrictions" that the Act established is its statute of limitations, which bars malpractice claims that are not initiated within three years of the date of the wrongful act. Section 41–5–13. In contrast, the personal injury statute of limitations, Section 37–1–8, bars actions that are not brought within three years of the accrual of the cause of action. In the absence of explicit instructions from the legislature, when a cause of action accrues under a statute of limitations is a judicial determination. *See Roybal*, 72 N.M. at 287, 383 P.2d at 252; *see also Harig v. Johns–Manville Prods. Corp.*, 284 Md. 70, 394 A.2d 299, 302 (1978) (accrual of cause of action is judicial determination in absence of explicit statutory definition); *Franklin v. Albert*, 381 Mass. 611, 411 N.E.2d 458, 462 (1980) (same); *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170, 172 (1977) (same); *Berry v. Branner*, 245 Or. 307, 421 P.2d 996, 999 (1966) (in banc) (same).

The instant case illustrates why the statute of limitations of the Act, Section 41–5–13, must be considered to be a benefit of the Act. If the statute of limitations of the Act applies, petitioner's claim is barred because it was filed more than three years

after the negligent act even though petitioner may not have discovered her injury. If, however, the statute of limitations for personal injury, Section 37–1–8, applies, petitioner's claim may not be barred, depending upon when the cause of action accrued. *See Peralta*, 90 N.M. at 394, 564 P.2d at 197 ("[L]imitation period runs from the time the injury manifests itself in a physically objective manner *and* is ascertainable."); *cf. Crumpton v. Humana, Inc.*, 99 N.M. 562, 563, 661 P.2d 54, 55 (1983) (quoting *Peralta* and stating that the "statute of limitations commences running from the *date of the injury* or *the date of the alleged malpractice.*"). We can see no greater benefit to SCHS than for the cause of action to be barred by the statute of limitations.

The statutory construction principles outlined above compel a similar result. SCHS contends that the legislature purposefully omitted the word "qualified" from the Act's statute of limitations, Section 41–5–13, and that this omission indicates that the legislature intended the statute to apply to all health care providers, regardless of whether the particular health care provider chose to become qualified under Section 41–5–5(A). In making this argument, however, SCHS ignores a cardinal principle of statutory construction, *i.e.*, that the Act should be read as a whole, giving effect to each portion of the statute. As petitioner observes, the entire Act is directed towards health care providers qualifying under Section 41–5–5(A). That, indeed, is the essence of Section 41–5–5(C), which reads: "A health care provider not qualifying under this section shall not have the benefit of any of the provisions of the Medical Malpractice Act in the event of a malpractice claim against it." Moreover, with three exceptions,[4] the Act, in referring to "health care providers," does not specifically state that such providers must be "qualified," even when those references are to substantive "benefits" of the Act.[5] Were we to adopt SCHS's interpretation, each provision under the Act not specifically referring to "qualified" health care providers would be available to every health care provider, regardless of whether that pro-

---

**4.** Sections 41–5–14, which creates the Medical Review Commission, refers to "health care providers covered by the Medical Malpractice Act" and to "health care providers qualified under the Medical Malpractice Act." Similarly, Section 41–5–15, which requires submission of claims to the Commission prior to filing suit, refers to "qualifying health care provider." Even so, immediately after these two references, the legislature reverts back to the term "health care provider" without qualification. *See* §§ 41–5–16, –17, –19, –20. The third occurrence, in Section 41–5–25(B), imposes an annual surcharge on "all health care providers qualifying under" Section 41–5–5(A)(1) to finance the Patient's Compensation Fund. Again, in subsequent references, the legislature returns to the term "health care provider" without qualification. *See* § 41–5–25(C).

**5.** § 41–5–6(D) (limiting a "health care provider's" personal liability); § 41–5–7(B) (providing that a patient shall be furnished with all medical care made necessary by the "health care provider's" malpractice); § 41–5–7(E) (limiting liability of "health care provider" for medical care and related benefits to $200,000.00); § 41–5–7(H) (making "health care provider" personally liable for punitive damages); § 41–5–8 (making evidence of prejudgment payment of injured person's medical expenses by "health care provider" inadmissible at trial); § 41–5–9(D) (allocating burden of proving need for medical care has subsided or abated or that medical care is not reasonably necessary to "health care provider"); § 41–5–10(A), (D), (E) (describing procedures for future examination by "health care provider" of patients receiving medical care pursuant to judgment or settlement); § 41–5–11(A), (B) (providing that any prejudgment payment of medical expenses shall inure to the exclusive benefit of the "health care provider" and preserving right of "health care provider" to recover such payments in the event the provider is not found liable); § 41–5–13 (providing accrual rule and statute of limitations for medical malpractice actions against "health care provider"); § 41–5–16(A), (B), (C) (discussing procedures for completing application for Commission review of malpractice claim against "health care provider"); § 41–5–17(A), (B), (C), (D), (E), (H) (establishing procedures for Commission panel selection to review malpractice claims against "health care provider"); § 41–5–19(A), (B) (discussing hearing procedures for claims brought against "health care provider"); § 41–5–20(D) (providing that panel's report shall be sent to the "health care provider's" professional licensing board); § 41–5–25(A), (C), (D), (H) (discussing operation of Patient's Compensation Fund with respect to "health care provider"); § 41–5–27 (discussing reporting duties of district court with respect to judgments against "health care providers").

vider qualified under the Act or not. Such an interpretation would make a mockery of the Act and defy the statutory construction principles outlined above. To accept SCHS's argument would render Section 41–5–5(C) a nullity. *Cf. Klineline,* 106 N.M. at 737, 749 P.2d at 1116 (interpreting one part of statute so as not to render another part of statute superfluous).

In an attempt to persuade us to uphold *Armijo,* SCHS argues that the construction given to the Act above will result in future litigants challenging the Act because the provisions, as construed, violate equal protection. *See Armijo,* 98 N.M. at 183–84, 646 P.2d at 1247–48. SCHS contends that we could avoid this constitutional problem by simply following *Armijo.* While we agree with SCHS that "a central objective of statutory construction is to refrain from undermining the constitutionality of the legislature's handiwork," *see Huey v. Lente,* 85 N.M. 597, 598, 514 P.2d 1093, 1094 (1973), we note that petitioner also invokes the *Huey* principle to support her argument that we should overrule *Armijo* in order to avoid the question of whether Section 41–5–13 is unconstitutional as depriving her and other similarly situated claimants of their right to access to the courts. In any event, we need not reach either constitutional question here. Whether or not the distinction between qualified and nonqualified health care providers under the Act creates an equal protection problem and whether or not the statute gives rise to other constitutional issues are questions not presented by the instant appeal. The parties have not briefed these issues and we will not decide them now.

Thus, in construing the Act as a whole, we hold that the Act's statute of limitations, Section 41–5–13, does not apply to health care providers, such as SCHS, that have not qualified under Section 41–5–5(A). Cases holding to the contrary are hereby overruled.[6]

**B**

■ As discussed in Section II, *supra,* the cases interpreting when a cause of action for medical malpractice outside of the ambit of the Act accrues are conflicting. In *Roybal,* we held that a cause of action in a medical malpractice case accrues at the time of the wrongful act. 72 N.M. at 287, 383 P.2d at 252. However, the Court of Appeals has held that a cause of action accrues when a physically objective and ascertainable injury to the plaintiff occurs. *Peralta,* 90 N.M. at 394, 564 P.2d at 197.[7] The instant case has required us to examine the rationale of these cases to determine whether the time of the negligent act rule retains its vitality. We conclude that it does not and accordingly overrule those cases that are inconsistent with the following discussion.

The facts in *Roybal* were similar to those in the instant case. In *Roybal,* the plaintiffs filed a medical malpractice complaint alleging that Mrs. Roybal had suffered injuries arising out of an operation performed by the defendant-physician. The complaint alleged that a sponge had been left in plaintiff's abdomen, which required a further surgery to remove the sponge. Mrs. Roybal sought damages resulting from the alleged malpractice, and her hus-

---

**6.** Our holding today that nonqualified health care providers may not partake of any of the benefits of the Act is consistent with our holding in *Grantland v. Lea Regional Hosp., Inc.,* 110 N.M. 378, 796 P.2d 599 (1990). In *Grantland,* we held that Section 41–5–22, which tolls the Act's statute of limitations period upon the filing of a claim with the Medical Review Commission, applies to nonqualified as well as qualified health care providers. *Id.* at 380, 796 P.2d at 601. Section 41–5–22 cannot be considered a "benefit" of the Act because, by tolling the statute of limitations, it acts to the nonqualified health care provider's detriment. Further, as we noted in *Grantland,* enforcing Section 41–5–22 against nonqualified health care providers is

consistent with one of the purposes of the Act, *i.e.,* to prevent the filing of nonmeritorious malpractice claims in district court. *Id.*

**7.** In *Crumpton v. Humana, Inc.,* 99 N.M. 562, 563, 661 P.2d 54, 55 (1983), we cited *Peralta* with approval. In *Crumpton,* we interpreted the statute of limitations under the Act, Section 41–5–13, and the general three-year statute of limitations, Section 37–1–8. We held that either statute of limitations commences to run "from the *date of injury* or the *date of the alleged malpractice.*" *Crumpton,* 99 N.M. at 563, 661 P.2d at 55.

band sought damages for loss of consortium, services, and medical expenses. Because the complaint was filed over ten years after the first surgery, the trial court found that both causes were barred by the statute of limitations. *Roybal*, 72 N.M. at 286, 383 P.2d at 251. On appeal, we held that the cause of action accrued at the time of the negligent act and affirmed the trial court. *Id.* at 287, 383 P.2d at 252.

In *Roybal*, we relied on *Kilkenny v. Kenney*, 68 N.M. 266, 361 P.2d 149 (1961), for our formulation of the time of the negligent act rule. In *Kilkenny*, we considered a medical malpractice action brought by a decedent's surviving husband. On December 11, 1955, Mrs. Kilkenny, a diabetic, was admitted to a hospital to have her diet adjusted. The following day, while in the exclusive care of the defendants, Mrs. Kilkenny went into a diabetic coma from which she died on December 2, 1958. Her husband, who filed his complaint November 12, 1959, asserted three causes of action, one of which was for personal injuries caused to the decedent by the defendant. This cause of action sought to recover medical expenses of the decedent between the time of the negligent act and the time of death. *Id.* at 267–69, 361 P.2d at 150–52. We held that the statute of limitations, NMSA 1953, Section 23–1–8, barred the husband's action for personal injury because "the same should have been filed within three years *from the date of the injury.*" *Id.* at 270, 361 P.2d at 151 (emphasis added).

In *Kilkenny*, the date of the negligent act that caused Mrs. Kilkenny to lapse into a coma was the same as the date of the injury. Thus, when we applied the date of the negligent act rule in *Roybal*, we equated the date of the negligent act with the date of the injury and perhaps misconstrued the rule to be applied when the injury either does not occur or manifest itself on the same date as the negligent act. In *Peralta*, the Court of Appeals recognized this incongruity in *Roybal* and held that the cause of action for personal injuries caused by medical malpractice accrues at the time of the injury to the plaintiff. 90 N.M. at 393, 564 P.2d at 196. *Peralta* also listed further reasons, which we find persuasive, for refusing to follow *Roybal*. First, the relevant statute of limitations, in the instant case Section 37–1–8, "does not state that the limitation period runs from the time of the wrongful act." *See id.* at 392, 564 P.2d at 195. Second, there is no cause of action for malpractice in the absence of an injury. *Id.* at 393, 564 P.2d at 196. Third, in personal injury cases not involving malpractice, a cause of action accrues at the time of the injury. *Id.* (citing *New Mexico Elec. Serv. Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976); *Chavez v. Kitsch*, 70 N.M. 439, 374 P.2d 497 (1962)).[8]

Moreover, our decision in *Roybal* was premised in part on the date of the negligent act rule as being the majority rule. *Roybal*, 72 N.M. at 287, 383 P.2d at 252 (citing Annotation, *When Statute of Limitations Commences to Run Against Malpractice Action Against Physicians, Surgeons, Dentists, or Similar Practitioners*, 80 A.L.R.2d 368 (1961); Annotation, *When Statute of Limitations Commences to Run Against Actions Against Physicians, Surgeons, or Dentists for Malpractice*, 144 A.L.R. 209, 212 (1943); Annotation, *When Statute of Limitations Commences to Run Against Actions Against Physicians, Surgeons, or Dentists for Malpractice*, 74 A.L.R. 1317 (1931)). While the date of the negligent act rule may have been the majority rule when *Roybal* was decided, it has been under "constant intellectual bombardment," *Ruth*, 453 P.2d at 634, and no longer retains that position. The great weight of authority, both in decisions and commentary, today recognizes some form of the "discovery rule," *i.e.*, that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists. David

---

**8.** In addition, in other professional malpractice cases the statute of limitations begins to run when the plaintiff suffers injury. *See, e.g., Spurlin v. Paul Brown Agency, Inc.*, 80 N.M. 306, 307, 454 P.2d 963, 964 (1969) (insurance agent malpractice); *Chisholm v. Scott*, 86 N.M. 707, 709, 526 P.2d 1300, 1302 (Ct.App.1974) (accountant malpractice). In legal malpractice cases, the statute of limitations accrues when the "harm or damage [is] ascertainable or discoverable." *Jaramillo v. Hood*, 93 N.M. 433, 434, 601 P.2d 66, 67 (1979).

A. Sonenshein, *A Discovery Rule in Medical Malpractice: Massachusetts Joins the Fold,* 3 W. New Eng.L.Rev. 433, 433–34 & n. 1 (1981) (citing cases and statutes in forty-one jurisdictions adopting some form of discovery rule); Kovnat, *supra* note 1, at 17; Horn, *supra* note 3, at 272–73; Robert A. Brazener, Annotation, *When Statute of Limitations Commences to Run Against Malpractice Action Based on Leaving Foreign Substance in Patient's Body,* 70 A.L.R.3d 7 (1976 & Supp.1991). *See also* W. Page Keeton, et al., *Prosser & Keeton on Torts* § 30 (5th ed. 1984 & Supp. 1988); Ralph V. Seep, Annotation, *Accrual of Cause of Action for Purpose of Statute of Limitations in Medical Malpractice Actions Under Federal Tort Claims Act—Post–Kubrick Cases,* 101 A.L.R.Fed. 27 (1991).

Our decision to adopt the discovery rule is bolstered by weighing policy considerations on both sides of the issue. One policy consideration that a statute of limitations seeks to further is basic fairness to the defendant. *Harig v. Johns–Manville Prods. Corp.,* 284 Md. 70, 394 A.2d 299, 302 (1978). Under this broad umbrella fall purposes such as encouraging promptness in instituting a claim, suppressing stale or fraudulent claims, and avoiding inconvenience. *Id.* In addition, a statute of limitations is a statute of repose that encourages plaintiffs to bring their actions while the evidence is still available and fresh. *Franklin v. Albert,* 381 Mass. 611, 411 N.E.2d 458, 463 (1980).

While protecting the defendant is a laudatory goal, the statute of limitations should "reflect a policy decision regarding what constitutes an 'adequate period of time' for 'a person of ordinary diligence' to pursue his claim." *Harig,* 394 A.2d at 302 (quoting *Walko Corp. v. Burger Chef Sys., Inc.,* 281 Md. 207, 378 A.2d 1100, 1104 (1977); *McMahan v. Dorchester Fertilizer Co.,* 184 Md. 155, 40 A.2d 313, 315 (1944)). In most situations, the plaintiff in a tort action knows immediately of both the wrongful act and of the injury and, in fairness to the defendant, the cause of action accrues at the time of the negligent act. *See id.* 40 A.2d at 303. However, in situations where professional malpractice is the cause of the injury, "the fact that a tort has been committed may go unnoticed for years, because the plaintiff is unqualified to ascertain the initial wrong and could not reasonably be expected to know of the tort until actual injury is experienced." *Id.* "The manifest injustice of the [time of the negligent act] doctrine is that, rather than punishing negligent delay by the plaintiff, it punishes 'blameless ignorance' by holding a medical malpractice action time-barred before the plaintiff reasonably could know of the harm he has suffered." *Franklin,* 411 N.E.2d at 463.

In the context of malpractice by an accountant, our Court of Appeals has explained why the time of the injury rule is appropriate:

> In medical malpractice cases the injury occurs, and is often easily ascertained, at the time of the negligent act or omission. In a tax deficiency situation, the injury occurs only when the party aggrieved receives notice by mail from the tax commissioner. A person needs special training to know whether his tax return has been erroneously prepared. No special training is required to feel pain. In the relationship of accountant and client, the trust and confidence that the client places in the professional person places him in a vulnerable position should that trust and confidence be misplaced. It is the policy of the law to encourage that trust and confidence; likewise it is the duty of the law to protect the client from the negligent acts of the professional person.

*Chisholm v. Scott,* 86 N.M. 707, 709, 526 P.2d 1300, 1302 (Ct.App.1974) (citations omitted). While the *Chisholm* court distinguished medical malpractice from other types of professional malpractice, we believe that the rationale from *Chisholm* is applicable in cases such as the instant case in which the injury does not necessarily manifest itself at the time of the negligent act. Although the plaintiff in a medical malpractice case may not require any special knowledge or training to know that she suffers from pain, in the absence of such knowledge or training, she may be unable to ascertain the cause of that pain, *i.e.,* the professional malpractice of a physician.

The doctor-patient relationship, even more so than the accountant-client relationship, places the patient in a vulnerable position that requires the patient to place his or her confidence and trust in the doctor. The policy of the law must encourage the confidence and trust required in the doctor-patient relationship. Moreover, the law has a duty to protect the patient from injury caused by a negligent act of a physician. Thus, we hold that, in situations such as the instant case, the cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause.

Our above discussion does not necessarily preclude SCHS from claiming on remand that this action is time-barred. We believe that whether plaintiff in the instant case knew or with reasonable diligence should have known of the injury and its cause is a question of fact that is specifically within the trial court's competence. Accordingly, we reverse and remand with instructions for further proceedings consistent with this opinion.

IT IS SO ORDERED.

RANSOM, C.J., and MONTGOMERY, J., concur.