2002-NMCA-088

52 P.3d 412

Arthur L. GALLAGHER, personal representative of the Estate of Virginia Steele Gallagher, deceased, Plaintiff–Appellant,

v.

SANTA FE FEDERAL EMPLOYEES FEDERAL CREDIT UNION, a financial institution, Defendant–Appellee,

and

Philbert Garcia, Revina L. Garcia, and Wells Fargo Bank, N.A., Defendants.

No. 22,003.

Court of Appeals of New Mexico.

April 10, 2002.

Certiorari Denied, No. 27,601, Aug. 12, 2002.

Fred E. Davis III, Fred E. Davis III, P.C., Albuquerque, NM, for Appellant.

Thomas P. Gulley, Kerri L. Sanchez, Eastham, Johnson, Monnheimer & Jontz, P.C., Albuquerque, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} Based on a statute of limitations in the Uniform Commercial Code, Article 3, the district court granted summary judgment in favor of a payor bank against a personal representative claiming loss of funds due to forged indorsements of checks. We affirm, but do so on different statutes of limitations.

## BACKGROUND

{2} Virginia Steele Gallagher (Ms. Gallagher) had an account at Santa Fe Federal Employees Federal Credit Union (Credit Union). In addition, Ms. Gallagher and Defendant Revina L. Garcia had a joint account at First National Bank of Santa Fe (First National). Credit Union signed two Credit Union checks dated July 31, 1992, totaling $30,000, payable to Ms. Gallagher. The checks were issued in response to Ms. Gallagher's telephone request made to Credit Union to close her account. Whether Ms. Gallagher ever had physical possession of the checks remains unresolved. With the indorsement "Virginia S. Gallagher" on the back of each check, the checks were deposited into the First National joint account on August 3, 1992. Credit Union paid the checks and the joint account at First National was credited. On August 13, 1992, Revina or her husband, Philbert Garcia, transferred $29,000 from the First National joint account to a personal account in Missouri. Ms. Gallagher died on August 14, 1992.

{3} Arthur Gallagher (Gallagher), Ms. Gallagher's son and sole heir, visited New Mexico in August 1993 to investigate his mother's assets. After obtaining copies of the checks in September 1993, Gallagher concluded the indorsements on the checks were not his mother's. On August 14, 1995, he filed an application for informal probate of Ms. Gallagher's will and appointment as personal representative. He was appointed personal representative on December 29, 1995. As personal representative, Gallagher filed an action against Credit Union, Revina and Philbert Garcia, and Wells Fargo Bank (formerly First National) on August 26, 1997.

{4} Gallagher's complaint asserted two claims against Credit Union: breach of fiduciary duty and negligence. The complaint alleged: (1) Philbert and/or Revina Garcia unlawfully caused a $30,000 withdrawal from Credit Union; (2) Credit Union gave the Garcias unlawful access to Ms. Gallagher's account; and (3) Credit Union failed to safeguard Ms. Gallagher's assets. Credit Union filed two motions for summary judgment.

{5} Credit Union's first summary judgment motion asserted Ms. Gallagher, as co-owner of the First National joint account, had control over the funds in that account upon the deposit of the Credit Union checks. The essence of Credit Union's argument was that, even if the indorsements were forged, Ms. Gallagher actually received the proceeds of the checks upon their deposit into the joint account and Gallagher could not show a causal relationship between any loss of Ms. Gallagher and any breach of duty by Credit Union.

{6} In his response, Gallagher argued that "[i]f [Credit Union] had discovered the forged indorsements and refused to honor the checks, Ms. Gallagher would not have suffered any loss. Therefore, [Credit Union's] failure to safeguard her funds actually and proximately caused her damages." In other words, Credit Union should have

known the indorsements were forged and should not have paid the checks.

{7} Credit Union's second summary judgment motion invoked two statutes of limitations in Section 55–3–118 of the New Mexico Uniform Commercial Code—Negotiable Instruments (UCC), NMSA 1978, §§ 55–3–101 to –605 (1992), namely, Subsections (d) and (g) of Section 55–3–118:

> (d) An action to enforce the obligation of the acceptor of a certified check or the issuer of a teller's check, cashier's check, or traveler's check must be commenced within three years after demand for payment is made to the acceptor or issuer, as the case may be.

> (g) Unless governed by other law regarding claims for indemnity or contribution, an action (i) for conversion of an instrument, for money had and received, or like action based on conversion, (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this article and not governed by this section must be commenced within three years after the cause of action accrues.

Credit Union asserted Gallagher's common law negligence and breach of fiduciary duty claims were preempted because Gallagher's claims actually sought relief based on Credit Union's payment of the checks and the UCC required the action to be brought as one for conversion. Thus, Credit Union asserted, Gallagher's action was barred by the three-year statute of limitations in Section 55–3–118(g). Credit Union also indicated Gallagher's action was one to enforce the obligation of an acceptor of a certified check and was barred under Section 55–3–118(d).[1]

{8} Gallagher responded to the second motion for summary judgment by arguing that the UCC sections relating to conversion based on a forged indorsement did not preempt, preclude, or displace common law negligence or contract claims and the corresponding statutes of limitations. Gallagher then asserted he could elect between or among negligence, conversion, or breach of contract, relying on *Casarez v. Garcia*, 99 N.M. 508, 512–13, 660 P.2d 598, 602–03 (Ct. App.1983), a case decided under Section 55–3–419(1)(c), the predecessor to Section 55–3–420 which is the UCC section applicable here.[2]

{9} Although *Casarez* held only that the complaint was sufficient to state a claim under former UCC Section 55–3–419(1)(c), Gallagher relied on a treatise statement quoted in *Casarez* and on certain other language in *Casarez*, as follows:

> "[W]hen a bank pays on an instrument bearing a forged indorsement, the owner of the instrument may sue the drawee * * * or drawer * *." The plaintiff as the true owner of the [cashier's] check had a right to bring an action for conversion or negligence against the Bank as drawee when it paid on the unauthorized indorsement.

*Id.* at 512, 660 P.2d at 602 (quoting 6 E, W. Willier & F. Hart, *U.C.C. Reporter–Digest* § 3–419, Annot. 33, cmt. (1982) and citing former § 55–3–419(1)(c)). In addition, Gallagher relied on a case decided under pre-1992 law, which stated that nothing in the New York Uniform Commercial Code prevents the owner's right to elect a contract remedy and to avail himself of a more favorable statute of limitations, even if the contract claim was not pled. *Hechter v. N.Y. Life Ins. Co.*, 46 N.Y.2d 34, 412 N.Y.S.2d 812, 385 N.E.2d 551, 554 (1978). Further, Gallagher argued the statute of limitations was tolled and his cause of action did not accrue until the date he was appointed personal representative.

{10} In reply, Credit Union reiterated the UCC's preemption of Gallagher's negligence and breach of fiduciary duty claims, still ar-

---

1. The parties disagree on whether the checks are "cashier's" checks or "certified" checks. Gallagher contends the checks are cashier's checks and Credit Union contends they are certified checks. In so far as the application of statutes of limitations periods is concerned, it is immaterial how the checks are identified. Both limitations periods are three years.

2. Section 55–3–420 was enacted in 1992 with several other amendments to the UCC based on the substantial changes in 1992 made to the Official Uniform Commercial Code promulgated by the American Law Institute and the National Council of Commissioners on Uniform Laws.

guing the checks were certified checks and Section 55–3–118(d) applied, and arguing that Gallagher was required to bring the claim in conversion and that Section 5–3–118(g) applied. Credit Union further argued the statute of limitations was not tolled because Gallagher's cause of action accrued on August 3, 1992, and eleven days before Ms. Gallagher's death, the day demand for payment was made.

{11} The district court ruled only on Credit Union's second motion, that based on the statute of limitations. Without labeling Gallagher's claims, the court determined the statute of limitations began to run when the checks were deposited into the First National joint account, i.e., on August 3, 1992 (before Ms. Gallagher's death). The court was "not convinced that there is any reason for tolling the statute of limitations," and held Gallagher's action barred by the three-year statute of limitations in Section 55–3–118(d).

{12} On appeal, Gallagher relies on facts regarding Ms. Gallagher that were not before the trial court on summary judgment. He also asserts conclusions based on those facts. These facts and conclusions include the following: Ms. Gallagher was over 80 years old, wheelchair bound, legally blind, and she suffered from severe arthritis at the time of her death; she had physical and mental infirmities and was in the hospital during most of the events in question and in intensive care after having suffered a heart attack, during her impending death; and she was legally incapacitated and was incapable of handling her financial affairs and too old and infirm to possibly know of or discover Credit Union's conversion of her funds. Gallagher, in fact, acknowledges that "he has not yet had the opportunity to present evidence of [Ms. Gallagher's] infirmity."

{13} Gallagher did not move below to postpone summary judgment proceedings to permit further discovery or investigation or the filing of affidavits. He has not asked this Court to remand on the ground he was not given adequate opportunity to conduct investigation or discovery and present further evidence before the court decided Credit Union's motion for summary judgment. Gallagher's statement that "[w]hether Ms.

Gallagher had a reasonable opportunity to discover the conversion before her death is yet another genuine issue of material fact which precludes summary judgment," is incorrect.

{14} Gallagher also relies on the following facts regarding himself that were not before the trial court on summary judgment: Gallagher had no money with which to pursue legal action, and the Santa Fe and Albuquerque lawyers he called were not willing to take his case without a substantial retainer or on a contingency basis. Due to clerical mixup, when he did finally file the informal probate in August 1995, his letters testamentary were not issued until December 29, 1995.

{15} These facts regarding Ms. Gallagher and Gallagher are not material to our decision. Even were they material, the facts were not before the trial court in a form required under our rules of civil procedure and we will therefore not consider them, just as we will not consider conclusory assertions based on facts not properly before the court. *See* Rule 1–056(E), (F) NMRA 2002; *C & H Constr. & Paving Co. v. Citizens Bank,* 93 N.M. 150, 163, 597 P.2d 1190, 1203 (Ct.App. 1979) (stating assertion not entitled to consideration absent factual support).

## DISCUSSION

{16} Gallagher pled neither contract nor conversion. He did not seek to amend his complaint to assert these claims. Yet he asserts on appeal he was entitled to elect among his pled claims and other unpled claims to obtain the benefit of applicable statutes outside the UCC. The only material facts before the district court to support whatever claims Gallagher contends he can assert were that funds were withdrawn from Credit Union, the Credit Union checks were deposited in the joint account using forged indorsements, and Credit Union paid the checks. Credit Union raised Section 55–3–118(d) and (g) as defenses, and the district court granted summary judgment based on Section 55–3–118(d) alone.

{17} The record does not show what claim or claims the district court focused on in applying Section 55–3–118(d). However, be-

cause the court chose Section 55–3–118(d) as the controlling statute of limitations, it appears the court determined it did not have a claim in conversion before it. Instead, it seems the court considered the complaint-pled negligence and breach of fiduciary duty claims and perhaps even Gallagher's potentially-electable contract claim, to be claims to "enforce [Credit Union's] obligation" to pay "after demand for payment is made." § 55–3–118(d).

◼ {18} It is clear, however, that Gallagher was not pursuing a claim based on a breach by Credit Union of an obligation it had to pay the checks. His claims are therefore not governed by Section 55–3–118(d). To the extent Gallagher would be permitted to proceed below on a conversion claim, Section 55–3–118(g) would govern. To the extent Gallagher were permitted below to pursue negligence, breach of fiduciary duty, and breach of contract claims, based on an alleged breach of a duty not to pay the checks, statutes of limitations outside the UCC would govern only if not displaced by the UCC. NMSA 1978, § 55–1–103 (1961) sets the general rule for displacement of common law by the UCC:

> Unless displaced by the particular provisions of this act [this chapter], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy or other validating or invalidating cause, shall supplement its provisions.

We hold Gallagher's conversion claim and the statutes of limitations relating to his common law claims are displaced by particular provisions of the UCC.

### UCC Claim in Conversion Based on Credit Union's Payment

{19} UCC Sections 55–3–420(a) and 55–3–118(g) relate specifically to conversion. Section 55–3–420 is a modification of former Section 55–3–419. *See* § 55–3–420 cmt. 1. Under Section 55–3–420(a), a payor bank is liable in conversion when the bank pays on a forged indorsement:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

The official comment to this section states that it "covers cases in which a depositary or payor bank takes an instrument bearing a forged indorsement." § 55–3–420 cmt. 1. Section 55–3–118(g) provides a three-year statute of limitations for actions in conversion. Official comment 1 to Section 55–3–118 indicates the issue of tolling "is left to other law pursuant to Section 1–103 [55–3–103 NMSA 1978] [sic 55–1–103 NMSA 1978]." These "particular provisions," that is, Sections 55–3–420(a) and 55–3–118(g), govern Gallagher's conversion claim. § 55–1–103.

◼ {20} "Under common law, a cause of action for conversion accrued when a defendant exercised unauthorized control over the plaintiff's property." *Haddad's of Ill., Inc. v. Credit Union 1 Credit Union,* 286 Ill.App.3d 1069, 222 Ill.Dec. 710, 678 N.E.2d 322, 324 (1997). This accrual date is consistent with underlying UCC policies regarding negotiable instruments. *See, e.g., Menichini v. Grant,* 995 F.2d 1224, 1229–31 (3d Cir.1993) (stating UCC policies of negotiability, finality, uniformity, efficiency, and public interest require holding the discovery rule inapplicable in a conversion action based on forged indorsement); *Haddad's of Ill., Inc.,* 222 Ill. Dec. 710, 678 N.E.2d at 326 ("The use of negotiable instruments was intended to facilitate the rapid flow of commerce. This policy is best served by finding the accrual of a cause of action for conversion of negotiable instruments occurs when the instrument is negotiated.").

{21} That said, the cause of action accrual date with respect to actions in conversion is specifically covered by statute in New Mexi-

co.  NMSA 1978, § 37–1–7 (1880) applies: "In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, *or conversion of property,* the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved." (Emphasis added.)  *See Roberts v. Southwest Cmty. Health Servs.,* 114 N.M. 248, 252, 837 P.2d 442, 446 (1992) ("In the absence of explicit instructions from the legislature, when a cause of action accrues under a statute of limitations is a judicial determination.").  Gallagher points out that official comment 1 to Section 55–3–118(g) states that "the circumstances under which the running of a limitations period may be tolled is left to other law pursuant to Section [55–] 1–103."

■ {22} We agree with Gallagher that the New Mexico discovery rule in Section 37–1–7 applies to the conversion claim.  However, it is not necessary for us to decide whether, in this case, the statute did not begin to run (the cause of action did not accrue) until Gallagher discovered the forged indorsements in September 1993.  Assuming, without deciding, that the statute began to run in September 1993, Gallagher did not file this action until August 1997, which was over three years later, and that three-year period was not tolled.

■ {23} Thus, even were Gallagher to have the benefit of the discovery rule, he cannot stay in court.  Gallagher attempts to overcome having filed his action more than three years after his September 1993 discovery by asserting the statute of limitations was tolled until December 29, 1995, the date on which he was appointed personal repre-

sentative.[3]  We disagree.  Gallagher was the sole heir of his mother's estate.  He was the only person having any inheritance at stake.  He was the person to seek appointment as personal representative to protect his inheritance.  As sole heir and personal representative, he had an identity of interest.  As sole heir, he had knowledge in September 1993 of the facts giving rise to the claims he later asserted as personal representative.  Based on this knowledge, Gallagher cannot rely on the argument that the statute of limitations was tolled until he was appointed as personal representative of the estate.[4]  Furthermore, Gallagher lacked diligence.  Nothing in the record suggests Gallagher was unaware of his mother's death when or soon after she died.  No evidence shows he had no opportunity early on to be appointed personal representative of her estate in order to sue to recover the funds.

{24} Although the trial court granted summary judgment based on Section 55–3–118(d), we determine the trial court came to the right conclusion in this case, albeit for the wrong reason.  *See State v. Torres,* 1999–NMSC–010, ¶ 22, 127 N.M. 20, 976 P.2d 20 ("[W]e may affirm on grounds upon which the trial court did not rely unless those grounds depend on facts that [appellant] did not have a fair opportunity to address in the proceedings below.").  Under the facts before this Court, we conclude the conversion claim is barred under the three-year statute of limitation in Section 55–3–118(g).

**Claims Based on Credit Union Obligation Not to Pay Checks**

■ {25} Whether common law claims against a drawee or payor bank apart from

---

3.  Section 37–1–11 states: "If the person entitled to a cause of action die[s] within one year next previous to the expiration of the limitation above provided, the representatives of such persons shall have one year after such death within which to commence said action."  While this statute is not applicable in the present case because Ms. Gallagher died long before "one year next previous to the expiration of the limitation," the statute does show a legislative intent to allow a "representative" of the deceased person some time to investigate and file an action.  Still left open, however, is the issue of whether the statute is tolled during the period between death and appointment of an administrator or personal representative of the estate.

4.  Gallagher cites authority that he says is a majority of law holding that, after one's death, statutes of limitations are tolled until an administrator or personal representative is appointed to pursue the decedent's cause of action.  Credit Union's response is that the cause of action accrued before Ms. Gallagher's death, not after, and, therefore, Gallagher's authority does not apply.  Credit Union's argument necessarily assumes that Ms. Gallagher's cause of action did not accrue pursuant to Section 37–1–7 as of Gallagher's discovery of the forged indorsements.  As we indicate in the opinion, we need not, and therefore do not, address the issue of the application of Section 37–1–7.

conversion are displaced by the UCC is less clear. Liability of a drawee bank for negligence, breach of fiduciary duty, money had and received, or in implied contract is not directly mentioned in the UCC. Yet, Section 55–3–118(g) states that "an action (i) for conversion of an instrument, for money had and received, or like action based on conversion (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this article and not governed by this section must be commenced within three years after the cause of action accrues." We do not decide today whether the common law claims aside from conversion are displaced by the UCC. We do, however, interpret Section 55–3–118(g) as intending to displace statutes of limitations outside the UCC that may apply to these common law claims. While Gallagher asserts his claims arise based on Credit Union's failure to refuse payment, the claims are nevertheless based on the same act of Credit Union on which Gallagher's conversion claim is based: payment of the checks. We see no reason the statute of limitations for those common law claims should be different than that for a claim in conversion under the UCC where a payor bank pays a check on a forged indorsement. Even were we to assume the UCC does not displace the common law claims, a statute of limitations applying to any of those claims of a greater period than three years would conflict with the purposes of the UCC.

{26} No statutory tolling or statutory discovery rule applies to these common law claims. The issue whether judicial tolling based on the discovery rule may apply to these claims through Sections 55–3–118(g) and 55–1–103 was not raised by Gallagher below or on appeal. We therefore do not address that issue. *See Roberts,* 114 N.M. at 254, 837 P.2d at 448 ("The parties have not briefed these issues and we will not decide them now."). We note that some courts have not permitted application of the discovery rule in negotiable instruments transactions. *See Haddad's of Ill. Inc.,* 222 Ill.Dec. 710, 678 N.E.2d at 326 (holding the discovery rule inapplicable but doing so without discussing the comment in Section 55–3–118(g) or Section 55–1–103).

**Claims Based on Unlawfully Allowing Access to Account**

{27} In neither his docketing statement nor his briefs on appeal did Gallagher specifically raise error with respect to the disposition of his claims that Credit Union breached a fiduciary duty and was negligent by allowing unlawful access to Ms. Gallagher's account. The claims appear in the complaint, and the district court disposed of these claims, albeit under the wrong statute of limitations. However, because Gallagher did not raise or address these claims on appeal, he has waived any appellate review of an erroneous district court disposition with respect to these claims. We need not, and do not, address their dismissal.

**CONCLUSION**

{28} We affirm the summary judgment dismissing Plaintiff's claims against Credit Union.

{29} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL D. BUSTAMANTE, Judges.