# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date:  November 20, 2017**

**NO.  S-1-SC-35302**

**SARA CAHN,**

Plaintiff-Petitioner,

v.

**JOHN D. BERRYMAN, M.D.,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Nan G. Nash, District Judge**

Law Offices of Felicia C. Weingartner
Felicia C. Weingartner
Albuquerque, NM

Law Office of Cid D. Lopez, LLC
Cid Dagward Lopez
Albuquerque, NM

Carmela D. Starace
Albuquerque, NM

for Petitioner

Butt, Thornton & Baehr, P.C.
Emily A. Franke
Albuquerque, NM

Hinkle Shanor LLP
William P. Slattery
Dana Simmons Hardy
Santa Fe, NM

for Respondent

**OPINION**

**NAKAMURA, Justice.**

{1} The Medical Malpractice Act (MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2015) forecloses any cause of action that does not accrue within three years of the act of malpractice. *See* § 41-5-13. In this case, we clarify the contours of the due process exception to this limitation and hold that plaintiffs with late-accruing medical malpractice claims, i.e., claims accruing in the last twelve months of the three-year repose period, shall have twelve months from the time of accrual to commence suit.

{2} Petitioner Sarah Cahn invoked the due process exception but did not file her late-accruing medical malpractice claim against Respondent John D. Berryman, M.D., within twelve months. Twenty-one months elapsed between the accrual date of Cahn's claim against Dr. Berryman and the date she filed suit against him. Thus, her claim is barred by Section 41-5-13. We affirm the Court of Appeals and write to clarify the legal principles upon which our decision is based.

**I.    BACKGROUND**

{3} In 2006, Cahn sought treatment for pelvic pain at Lovelace Women's Hospital in Albuquerque. In May 2006, Cahn received a pelvic ultrasound. The ultrasound

report indicated that there was a complex mass on Cahn's left ovary and noted that "[a] malignancy need[ed] to be excluded."

{4} On August 8, 2006, Cahn consulted Dr. Berryman. This was Dr. Berryman's only appointment with Cahn. At that time, Dr. Berryman worked for Sandia OB/GYN Associates, P.C., in an office located in the Lovelace Women's Hospital medical complex. Dr. Berryman reviewed the ultrasound report, but did not schedule a biopsy. Rather, he examined Cahn, diagnosed her as having endometriosis, and provided her with medication for that condition intending that she return to his office for a follow-up visit. Contrary to Dr. Berryman's intention, Cahn never returned for follow-up care.

{5} On September 22, 2008, while seeing an OB/GYN in Wyoming for her continuing pelvic pain, Cahn learned that Dr. Berryman had failed to inform her of the mass on her left ovary. Further tests revealed that Cahn had ovarian cancer, and on October 15, 2008, she underwent a hysterectomy in New York.

{6} After surgery, Cahn set out to sue Lovelace Health System, Inc., (LHS) and her doctors. She could not, however, remember Dr. Berryman's name or precisely when he treated her. Cahn took steps to discover Dr. Berryman's name and the date of her consultation with him. She submitted record requests to various Lovelace health care provider entities and other medical providers in Albuquerque, called one Lovelace

entity, and requested explanation of benefits forms from her health insurer. But the documents and information she received in response did not identify Dr. Berryman. After Cahn retained counsel, additional record requests were submitted by counsel on Cahn's behalf to various Lovelace entities, but the records received in response to those requests similarly did not reflect the consultation with Dr. Berryman.

{7} On April 10, 2009, Cahn filed a complaint alleging medical malpractice against LHS and several other defendants. Dr. Berryman was not a named defendant. On July 1, 2010, LHS produced records in response to Cahn's requests for production showing that Cahn received care from Dr. Berryman on August 8, 2006. On July 9, 2010, exactly one week after receiving these records, Cahn filed an amended complaint in which she named Dr. Berryman as a defendant and asserted a medical malpractice claim against him. Before proceeding further, we pause to emphasize the dispositive facts which can be discerned from the foregoing.

{8} The act of malpractice that Cahn alleges Dr. Berryman committed occurred on August 8, 2006. Cahn's malpractice claim accrued on September 22, 2008, the date she discovered that Dr. Berryman did not alert her to the findings indicated by the May 2006 ultrasound report. *See Roberts v. Sw. Cmty. Health Servs.*, 1992-NMSC-042, ¶ 27, 114 N.M. 248, 837 P.2d 442 ("[T]he cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its

3

cause."). Cahn's claim accrued ten and one-half months before August 8, 2009, when the three-year repose period of Section 41-5-13 was set to expire. Cahn sued Dr. Berryman on July 9, 2010, three years and eleven months after Dr. Berryman's act of malpractice occurred and one year and nine and one-half months (more than twenty-one months) after Cahn's claim accrued. A pictorial representation of these events is included at the end of this opinion as Appendix A.

{9} In the Second Judicial District Court, Dr. Berryman moved for summary judgment arguing that Section 41-5-13 barred Cahn's malpractice claim. The court denied Dr. Berryman's motion concluding that application of the statutory bar would violate Cahn's right to due process as guaranteed by the United States and New Mexico Constitutions. The district court later denied Dr. Berryman's motion for reconsideration on the question of the applicability of Section 41-5-13. Dr. Berryman then requested that the court certify the statute-of-repose issue for interlocutory appeal. The court entered an order certifying the issue, but the Court of Appeals denied Dr. Berryman's application.

{10} The district court then set the case for a jury trial, but Cahn and Dr. Berryman entered into a stipulated conditional directed verdict and final judgment, stating that Dr. Berryman was liable to Cahn for medical negligence in the amount of $700,000 but preserving for appeal the issue of whether Section 41-5-13 barred Cahn's

4

malpractice claim. The Court of Appeals, in a divided opinion, concluded that Section 41-5-13 did bar Cahn's claim and reversed the district court, which had "ruled otherwise." *Cahn v. Berryman*, 2015-NMCA-078, ¶ 1, 355 P.3d 58, *cert. granted*, 2015-NMCERT-007.

{11} Cahn petitioned for a writ of certiorari, which we granted, exercising our jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972). We issued the writ to consider whether the application of Section 41-5-13 to bar Cahn's malpractice claim violated her right to due process.

**II.    DISCUSSION**

**A.    Standard of Review**

{12} "This Court's review of orders granting or denying summary judgment is de novo." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243. "Summary judgment is appropriate in the absence of any genuine issues of material fact and where the movant is entitled to judgment as a matter of law." *Id.* "In reviewing an order on summary judgment, we examine the whole record on review, considering the facts in a light most favorable to the nonmoving party and drawing all reasonable inferences in support of a trial on the merits." *Id.*

**B.      Section 41-5-13: the MMA's Statute of Repose**

{13}     "Like many other states, New Mexico reformed its medical malpractice laws in 1976 in response to a much discussed medical malpractice crisis." *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶ 40, 121 N.M. 821, 918 P.2d 1321. Surveying that crisis, the Court of Appeals observed that

> [t]he insurance crisis that prompted the enactment of the MMA arose out of a nationwide perception that medical malpractice insurance was increasingly becoming unavailable.  The specific event that triggered concern in New Mexico was the announced withdrawal in 1975 of the Travelers' Insurance Company as the underwriter of the New Mexico Medical Society's professional liability program. Travelers' withdrawal jeopardized health care providers' protection against liability claims and, in turn, compromised the legal remedies available to health care consumers injured by the negligence of health care providers.

*Baker v. Hedstrom*, 2012-NMCA-073, ¶ 22, 284 P.3d 400 (citing Ruth L. Kovnat, *Medical Malpractice Legislation in New Mexico*, 7 N.M. L. Rev. 5, 7 (1976-77)), *aff'd on other grounds*, 2013-NMSC-043, 309 P.3d 1047.  The insurance crisis prompted concerns about the departure of medical providers from New Mexico as well as the availability of recovery for New Mexicans who suffer injuries resulting from medical malpractice. *See id.*

{14}     The MMA sought to address this crisis by ensuring that professional liability insurance was available to health care providers in New Mexico.  Section 41-5-2. The Legislature "concluded that the potential for a malpractice suit being filed long

after the act of malpractice was one of the reasons that insurance carriers were withdrawing from medical malpractice liability coverage." *Cummings*, 1996-NMSC-035, ¶ 40. To address this problem, the Legislature enacted Section 41-5-13 and precluded "almost all malpractice claims from being brought more than three years after the act of malpractice." *Cummings*, 1996-NMSC-035, ¶¶ 39-40.

{15} Section 41-5-13 provides as follows:

> No claim for malpractice arising out of an act of malpractice which occurred subsequent to the effective date of the [MMA] may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred except that a minor under the full age of six years shall have until his ninth birthday in which to file. This subsection . . . applies to all persons regardless of minority or other legal disability.

This provision operates as a statute of repose. *Tomlinson v. George*, 2005-NMSC-020, ¶ 8, 138 N.M. 34, 116 P.3d 105. Statutes of repose reflect a legislative policy to extinguish, after the passage of a period of time, all liability for claims not filed by the end of the repose period irrespective of whether the claims have already accrued or have yet to accrue. *See id.* Statutes of repose begin to run when a statutorily designated event occurs, "without regard to when the underlying cause of action accrues and without regard to the discovery of injury or damages." *Garcia ex rel. Garcia v. LaFarge*, 1995-NMSC-019, ¶ 14, 119 N.M. 532, 893 P.2d 428; *see also* Restatement (Second) of Torts § 899(g) (Am. Law Inst. 1979)

7

("[S]tatutes [of repose] set a designated event for the statutory period to start running and then provide that at the expiration of the period any cause of action is barred . . . ."). "Section 41-5-13's statutorily determined triggering event is . . . the act of medical malpractice and does not entail whether the injury has been discovered." *Tomlinson*, 2005-NMSC-020, ¶ 9 (internal quotation marks and citation omitted). This Court has concluded that "the three-year time limit of Section 41-5-13 establishes a reasonable termination point for medical malpractice claims." *Cummings*, 1996-NMSC-035, ¶ 39.

**C.     The Due Process Exception to the Application of Section 41-5-13**

{16}     The Due Process Clauses of the United States and New Mexico Constitutions, U.S. Const. amend. XIV, § 1; N.M. Const., art. II, § 18, provide the basis for an exception to the application of the MMA's statute of repose. *Garcia*, 1995-NMSC-019, ¶¶ 35-36 (citing *Terry v. N.M. State Highway Comm'n*, 1982-NMSC-047, 98 N.M. 119, 645 P.2d 1375). Once a cause of action accrues, it is subject to the protections of due process. *See Garcia*, 1995-NMSC-019, ¶¶ 33-36 (citing *Wilson v. Iseminger*, 185 U.S. 55, 62 (1902)); *see also Terry*, 1982-NMSC-047, ¶¶ 9-17. Hence, *Garcia* held that due process requires that the plaintiff have a reasonable amount of time in which to commence suit after any late-accruing medical malpractice claim has accrued. *See* 1995-NMSC-019, ¶¶ 35-36. This due process

exception is implicated, however, only if a plaintiff's claim accrues late within the three-year repose period. *See Tomlinson*, 2005-NMSC-020, ¶ 23. Due process does not prevent Section 41-5-13 from cutting off claims that are discovered after the three-year repose period has run. *Id.*

{17}     When a medical malpractice claim accrues late within the repose period and the plaintiff requires additional time beyond that period to commence suit, to what amount of time is the plaintiff entitled as a consequence of due process before Section 41-5-13 extinguishes the claim?   Three cases have touched directly upon this question.

{18}     In *Garcia*, the plaintiff's malpractice claim accrued eighty-five days before the expiration of the MMA's three year repose period, and we held that eighty-five days is a constitutionally insufficient amount of time for the plaintiff to commence suit. *See* 1995-NMSC-019, ¶¶ 37-38. In *Cummings*, by contrast, the plaintiff's claim accrued eighteen months before the expiration of the repose period, and we determined that eighteen months was a constitutionally reasonable amount of time. *See* 1996-NMSC-035, ¶¶ 57-59. And in *Tomlinson*, the plaintiff's claim accrued thirty-two months before the expiration of the repose period, and we determined that this was most certainly a constitutionally reasonable amount of time. *See* 2005-

9

NMSC-020, ¶¶ 3, 23. Expanding our inquiry beyond the MMA context, we glean additional insight into the answer to the issue before us.

{19} New Mexico appellate courts have upheld as consistent with due process the application of statutory bars that create limitations periods of one year. *See Terry*, 1982-NMSC-047, ¶ 17 ("We have upheld limitations periods as short as one year when justified by specific considerations."); *Martinez v. Pub. Emps. Ret. Ass'n of N.M.*, 2012-NMCA-096, ¶¶ 15, 40-41, 286 P.3d 613 (observing that the one-year deadline set forth in NMSA 1978, Section 10-11-14.5(A) (1997) "functions like a statute of repose" and upholding the application of that statutory provision as consistent with due process). Other jurisdictions have done the same. *See, e.g.*, *Canadian N. Ry. Co. v. Eggen*, 252 U.S. 553, 562-63 (1920) (concluding that a one-year statute of limitations for a personal injury tort action was "*reasonably sufficient to enable an ordinarily diligent man to institute proceedings for . . . [the] protection [of his rights]*" (emphasis added)). The Supreme Court of Ohio, when considering an analogous due process exception to a medical malpractice statute of repose, said that "[a] reasonable time in which to bring a medical malpractice action was defined . . . as *one year* after the discovery of the malpractice." *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 716 (Ohio 1987) (emphasis added) (internal quotation marks and citation omitted). Limitations periods of less than a year have

10

also been upheld as consistent with due process. *See Ferguson v. N.M. State Highway Comm'n*, 1982-NMCA-180, ¶¶ 12, 14-15, 99 N.M. 194, 656 P.2d 244 (holding that the ninety-day notice requirement of NMSA 1978, § 41-4-16(A) (1977, as amended 2013) within the Tort Claims Act does not deny due process because it is not unreasonably short); *Littlewolf v. Hodel*, 681 F. Supp. 929, 939-40 (D.D.C. 1988) (collecting cases upholding "statutes of limitations barring suit within similarly short periods of time [i.e., 180 days]"); Robin Miller, *Validity of Medical Malpractice Statutes of Repose*, 5 A.L.R.6th 133, § 18 (2005 & Supp. to the present) (collecting cases from jurisdictions that have adjudicated constitutional challenges to analogous medical malpractice statutes of repose). From these various authorities, we draw our conclusion.

{20} We hold that twelve months is a constitutionally reasonable period of time within which to file an accrued claim regardless of whether the claim accrues twelve months or one day before the expiration of the three-year repose period. Our holding should not, however, be interpreted to mean that twelve months is the *minimum time period* that will satisfy due process. Our decision today does not preclude our Legislature from shortening—or lengthening—the additional time plaintiffs with late-accruing claims receive. To ensure that our holding is clear, we offer some illustrations of the rule we have articulated.

{21}   If a malpractice claim accrues (i.e., the plaintiff discovers that she has suffered malpractice) twelve months prior to the expiration of the three-year repose period, the plaintiff shall have the remainder of the repose period (twelve months) to commence suit.  If, however, the claim accrues six months prior to the expiration of the repose period, the plaintiff will have twelve months from that accrual date to file her claim, i.e., the remainder of the repose period plus an additional six months after the expiration of the repose period (a total of twelve months).  If the claim accrues on the last day of the repose period, the plaintiff shall have twelve months from that last day to file suit.  These examples are offered to illustrate that a plaintiff with a late-accruing claim shall have twelve months from whichever date the late-accruing claim accrues to file suit.  But the benefit of additional time that this due process exception provides inures only to plaintiffs with late-accruing claims, i.e., claims accruing in the last twelve months of the three-year repose period.  Plaintiffs with claims accruing in the first twenty-four months of the repose period shall not benefit from this exception to Section 41-5-13 as claims that accrue in that time period are not "late accruing."  Additionally, Section 41-5-13 extinguishes any claim accruing after the three-year repose period has expired.

{22}   We recognize that our decision to grant plaintiffs with late-accruing medical malpractice claims a twelve-month period in which to file those claims is inconsistent

12

with *Garcia* where we determined that a plaintiff with a late-accruing medical malpractice claim would receive the benefit of the statute of limitations which would have been applicable had Section 41-5-13 never been enacted. 1995-NMSC-019, ¶ 37. We now overrule this specific portion of *Garcia*. Having established the principles that guide our analysis, we need only apply them to the facts in Cahn's case. Before doing so, we respond to the dissent.

{23} The dissent claims that our ruling today is a form of "legislating" that "entangles and imperils fundamental separation-of-powers jurisprudence" and is inconsistent with "longstanding" due-process jurisprudence because the twelve-month rule we embrace applies "in every case regardless [of] the circumstances [presented]." Dissenting Op. ¶¶ 53-54, 63, 74. Clearly, we disagree.

{24} Our Legislature has not made accommodations for plaintiffs, like Cahn, whose medical malpractice claims accrue late in Section 41-5-13's three-year repose period and who require additional time beyond the three-year period to file claims. Other state legislatures have provided such accommodations in statute of repose contexts other than medical malpractice. *See, e.g.*, Ariz. Rev. Stat. Ann. § 12-552(B) (1992) (allowing a one-year period for the commencement of suit on claims accruing in the final year of an eight-year statute of repose); Cal. Civ. Proc. Code § 337.1(b) (West 1967) (allowing a one-year period for the commencement of suit on claims accruing

13

in the final year of a four-year statute of repose); Colo. Rev. Stat. Ann. § 13-80-104(2) (West 2001) (allowing a two-year period for the commencement of suit on claims accruing in the final two years of a six-year statute of repose). Our Legislature's inaction is significant. Once we embrace the conclusion that Cahn is entitled, as a consequence of due process, to some additional period of time beyond that provided in the MAA to initiate her action against Dr. Berryman, we cross a Rubicon of sorts. Whatever answer we supply to the question "To how much additional time, exactly, is Cahn entitled?" we necessarily inject our judgment into a sphere otherwise controlled by statute and must engage in the type of line drawing that is best handled in the first instance by the Legislature. *See Hartford Ins. Co. v. Cline*, 2006-NMSC-033, ¶ 8, 140 N.M. 16, 139 P.3d 176 ("The predominant voice behind the declaration of public policy of the state must come from the legislature . . . ."). The dissent contends that we may minimize our intrusion by resorting to "applicable background statute of limitations." Dissenting Op. ¶¶ 43-44. While this claim has surface level appeal, it does not withstand scrutiny.

{25} In an earlier section of this opinion, we noted that our Legislature enacted the MMA and its statute of repose, in part, to supplant the very background statute of limitations the dissent insists should control. If this is so, then applying the background statute of limitations is, if anything, the result most inconsistent with the

14

Legislature's intentions and the result most intrusive and susceptible to criticism based on separation of powers principles. This point seems to have been overlooked by *Terry* and *Garcia*. Neither case provides a meaningful explanation why the background statute of limitations should apply. *Terry* merely notes that the judiciary does not "set appropriate limitations periods." 1982-NMSC-047, ¶ 17. Our decision to extend to Cahn—and any other plaintiff with a late-accruing MMA claim—an additional year from the date of accrual is not "setting a limitations period." The limitations period, or more accurately the repose period, in the MMA is three years. Our opinion today does nothing to change this fact. The additional time we provide plaintiffs with late-accruing claims is a constitutionally mandated exception to the application of this three-year period.

{26}     The assertion that the rule we embrace fails to account for the particular facts of each case reflects a misunderstanding of the rule. It is necessarily tethered to the facts of each case and extends the repose period one year beyond the accrual date *of the particular late-accruing claim at issue*. The rule mirrors and, thus, is faithful to the structure of the MMA itself. Like any other MMA claimant, plaintiffs with late-accruing claims must file within a fixed amount of time. If they fail to do so, their claim is lost. If our Legislature determines that our rule is not faithful to the MMA or fails to reflect policy it deems most wise, it is free (as we have already noted) to

15

enact a provision that reflects its judgment about the most prudent way to accommodate plaintiffs with late-accruing claims.

**D.      Cahn Filed Her Late-Accruing Claim Against Dr. Berryman More Than Twelve Months After It Accrued**

{27}      Cahn's claim against Dr. Berryman accrued late. At the time her claim accrued, ten and one-half months remained before the expiration of the repose period. Cahn filed suit against Dr. Berryman after the expiration of the repose period. One year and nine and one-half months—more than twenty-one months—elapsed between the date Cahn's claim against Dr. Berryman accrued and the date she filed the amended complaint in which he was named as a defendant. Thus, at the time Cahn commenced suit against Dr. Berryman, more than twelve months had elapsed from the date that Cahn's claim accrued. Cahn has not argued that Dr. Berryman's identity was fraudulently concealed from her. *See Tomlinson*, 2005-NMSC-020, ¶ 2 (recognizing that the statutory period of repose may be tolled when "the plaintiff does not discover the alleged malpractice within the statutory period as a result of the defendant's fraudulent concealment."). Accordingly, Cahn's claim against Dr. Berryman is barred by Section 41-5-13.

**III.      CONCLUSION**

{28}      Due process does not preclude application of Section 41-5-13 to bar Cahn's claim against Dr. Berryman. We affirm the Court of Appeals and remand to the

16

district court for the entry of final judgment or any further proceedings the court deems necessary.

{29}   **IT IS SO ORDERED**.

_____
**JUDITH K. NAKAMURA, Chief Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

**EDWARD L. CHÁVEZ, Justice, specially concurring**

**PETRA JIMENEZ MAES, Justice, dissenting**

17

**CHÁVEZ, Justice (concurring in result).**

{30}    I concur in the result reached by the majority of the Court.  However, I cannot join in the holding that "plaintiffs with late-accruing medical malpractice claims . . . shall have twelve months from the time of accrual to commence suit."  Maj. op. ¶ 1. I am not persuaded by either the majority or the dissenting opinion that this Court should adopt a specific time period within which a plaintiff must file a lawsuit when due process considerations are at issue.  The polestar question in a due process analysis is whether reasonable time remains after a cause of action accrues within which a plaintiff, exercising due diligence, can file his or her claim before it is time-barred under a statute of repose.  If the answer is yes, then the claim must be filed within the statute of repose.  If the answer is no, then the claim must be filed within a reasonable time after the statute of repose has expired.  When reasonableness is the essence of a substantive due process claim, due process abhors the expediency of thoughtlessness. By necessity the due process analysis has always been a fact-based analysis which takes into account more than the date that the plaintiff's claim accrues. Twelve months from when an action accrues under the Medical Malpractice Act (MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2015) may prove to be a reasonable amount of time within which a plaintiff, exercising due diligence, can file his or her claim.  But whether the amount of time is reasonable depends on

the complexity of the case circumstances–not just when the cause of action accrued. For example, the complicated medical provider relationships that exist today, and the difficulty in identifying which doctor provided what treatment, or interpreted what lab results, radiographs, or so on, may make twelve months constitutionally inadequate. Nevertheless, because I conclude that Cahn had a reasonable time to bring her cause of action before the statute of repose expired, I concur in the result reached by the majority.

{31} I also do not agree with the dissenting opinion's suggestion that *Garcia ex rel. Garcia v. LaFarge*, 1995-NMSC-019, 119 N.M. 532, 893 P.2d 428, essentially requires a three-year accrual statute of limitations in MMA cases when the cause of action accrues within the statute of repose. *See* dissenting op. ¶¶ 48, 53. In *Garcia*, this Court found that eighty-five days before the statute of repose would run was too short a period of time for the Garcias, who were the plaintiffs, to bring a lawsuit against the defendant. *Id.* ¶ 37. Because the Legislature had not specified a reasonable period of time within which to bring claims that accrue shortly before the running of the statute of repose, in *Garcia* this Court imposed the three-year accrual statute of limitation of NMSA 1978, Section 37-1-8 (Repl. Pamp. 1990). 1995-NMSC-019, ¶ 37. The *Garcia* Court held that as it applied to the Garcias, Section 41-5-13 violated due process—the Court did not hold that the statute of repose was

unconstitutional on its face. 1995-NMSC-019, ¶¶ 36-37. Nor did the *Garcia* Court hold that Section 37-1-8 would be the controlling statute of limitation for MMA cases. 1995-NMSC-019, ¶ 37. Had it done so, I would vote to overrule *Garcia* simply on the basis of separation of powers.

{32}    In addition, the procedural history in *Garcia* is remarkably different from the instant case. In *Garcia*, the latest act of malpractice occurred on February 8, 1989. 1995-NMSC-019, ¶ 1. The plaintiffs had until February 8, 1992 to file a lawsuit. The cause of action arose out of a cardiac arrest that occurred on November 16, 1991, leaving the plaintiffs only eighty-five days to file suit under the statute of repose. *Id.* ¶¶ 1, 6, 13. On February 24, 1992, the Garcias filed an application with the Medical Review Commission. *Id.* ¶ 1. Under the provisions of Section 41-5-15(A), "[n]o malpractice action may be filed in any court against a qualifying health care provider before application is made to the medical review commission and its decision is rendered." The statute of repose is tolled "until thirty days after the panel's final decision is entered in the permanent files of the commission and a copy is served upon the claimant and his attorney by certified mail." Section 41-5-22; *see also Grantland v. Lea Reg'l Hosp.*, 1990-NMSC-076, ¶ 9, 110 N.M. 378, 796 P.2d 599 (holding that the statute of repose is tolled regardless of the outcome of the case). The Garcias filed their claim against the correct doctor 109 days from when it

20

accrued, or stated differently, just sixteen days after the running of the limitation period in the statute of repose.

{33} Filing an application with the Commission as to one provider does not toll the limitations period as to another provider who was not named in the original application and for whom the statutory period in which to file a cause of action has passed. *See Meza v. Topalovski*, 2012-NMCA-002, ¶ 8, 268 P.3d 1284. I make this latter point because Cahn filed a claim with the Commission, but she did not name Berryman, which deprived her of the tolling provision as to him.

{34} Regarding the question of whether reasonable time remained after a cause of action accrued within which Cahn, exercising due diligence, could have filed her claim before the running of the statute of repose, the following analysis persuades me that the answer is yes. Cahn received a pelvic ultrasound at West Mesa Medical Center on May 19, 2006. On August 8, 2006, she met with Dr. Berryman and provided him a copy of the written ultrasound report. Berryman neither referenced the findings indicated by the ultrasound report nor scheduled a biopsy. Instead, Berryman examined Cahn, diagnosed her as having endometriosis, prescribed medication for that condition, and advised Cahn to return to his office for a follow-up visit. She did not return for a follow-up visit.

{35}   Ultimately, as reflected in both the majority and the dissenting opinions, Cahn knew of her injury and its cause[1] on September 22, 2008. However, she could not remember the name of the doctor who caused or contributed to her injury, or when he examined her. We know that Cahn had until August 8, 2009 to discover the identity of the doctor and sue him. By December 2008, Cahn had retained counsel to pursue her malpractice claim. Before retaining counsel, as early as October 27, 2008, while recovering from major surgery, Cahn herself began investigating to determine the identity of the doctor whom she believed had committed the act of malpractice. Did Cahn have health insurance at the time? If so, who did her insurer pay for the evaluation? Did she have a co-payment or a deductible she had to pay? If she did, how did she pay it, and is there a record of who she paid?

{36}   These questions might seem obvious in retrospect, but Cahn herself knew to ask the questions. In late 2008 Cahn contacted her health insurer, Lovelace Health Plan, and requested her explanation of benefits (EOB) forms for May, June, and July 2006. The doctor's identity was obviously not in the records that Cahn received because she saw Dr. Berryman in August, 2006. It is not clear why Cahn only

---

[1]*See Maestas v. Zager*, 2007-NMSC-003, ¶ 19, 141 N.M. 154, 152 P.3d 141 (describing the discovery rule as when a plaintiff knows or with reasonable diligence should have known of the injury and its cause, although the rule does not require that the plaintiff discover that the defendant's actions constitute medical malpractice).

requested EOBs for only three months. Had she requested all of the EOB forms for 2006 she would have received an EOB dated August 23, 2006, which identified Berryman as the doctor who treated her on August 8, 2006. Lovelace Health Plan had mailed this EOB to Cahn shortly after she received Berryman's medical services. Cahn's credit union bank statement in August 2006 listed Cahn's $30 co-payment to Sandia OB/GYN, where Berryman worked in August 2006.

{37} This procedural history persuades me that Berryman's identity was reasonably ascertainable within the time remaining on the statute of repose. There is no evidence that Berryman was concealing, much less fraudulently concealing, his identity. I would not find a due process violation in this case because the time was not unreasonably short for Cahn and her attorneys to identify Berryman in time to file a lawsuit within three years from the occurrence of the malpractice.

{38} The harshness of the result will be troubling to some, but not to others. Law is adversarial and morally ambiguous because both sides must make irreconcilable moral arguments, and only one side wins. Regarding statutes of limitation or of repose, I am reminded of what this Court stated in *Cummings v. X-Ray Associates of New Mexico, P.C.*, 1996-NMSC-035, ¶ 37, 121 N.M. 821, 918 P.2d 1321 (quoting *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) (alterations in original) (footnote omitted):

23

There is no statute of limitations that does not prevent some identifiable class from litigating its cause of action. Such a class is always characterized by the fact that its members failed to timely pursue their claim. Whether this failure is through careless negligence or innocent lack of information is generally irrelevant to the constitutionality of the time limit.

> [Statutes of limitation] are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. [The individual] may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

{39}    For example, had Mr. Garcia in the *Garcia v. LaFarge* case suffered his heart attack eighty-six days later, on February 9, 1992, his cause of action would have been time-barred, even though his cause of action had not accrued before then. *See Tomlinson v. George*, 2005-NMSC-020, ¶ 8, 138 N.M. 34, 116 P.3d 105 ("[A] statute of repose terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself." (alteration in original) (internal quotation marks and citation omitted)). This Court has upheld the constitutionality of the MMA statute of repose when the cause of action accrues after the statute of repose has expired against both an equal protection and a due process challenge. *Cummings*,

24

1996-NMSC-035, ¶¶ 22-42. Upholding the constitutionality of the MMA statute of repose in instances when the cause of action accrued after the statute of repose has expired necessarily requires upholding its constitutionality in the present case, where Cahn had reasonable time to bring her cause of action before the statute of repose expired.

{40}    I respectfully concur in the result reached by the majority.


_____
**EDWARD L. CHÁVEZ, Justice**

25

**MAES, Justice (dissenting).**

{41} Because I believe the teachings of our prior cases, the relevant statutory structure, the nature of the due process guarantee, and other fundamental constitutional considerations counsel against adoption of the twelve-month rule the majority creates today, I respectfully dissent.

**I.     The Terry–Garcia Analysis**

{42} The principles of our prior cases suggest we need not create a new rule here. For causes of action accruing within the statutory period—as Cahn's did here—our cases have made clear the statutory repose function is typically irrelevant; instead, we must answer two precise due process-oriented questions regarding the remaining effective limitations period for the cause after accrual. *See Terry v. N.M. State Highway Comm'n*, 1982-NMSC-047, ¶¶ 10, 17, 98 N.M. 119, 645 P.2d 1375 (examining ten-year repose period for construction defect suits). First, because "[t]he constitutionality of statutes of limitation has hinged on the reasonableness of the time provided to pursue a remedy," *id.* ¶ 14, we have investigated whether and when the potentially remaining effective period for filing a complaint may be so "abbreviated" as to be constitutionally unreasonable. *Id.* ¶ 16. And where the potential period for filing *is* unreasonably abbreviated, we noted in *Terry*, we must address a second critical question of *what* the appropriate limitations period for the claim may be in the

26

absence of a specific legislative prescription in the repose provision or related provisions. *Id.* ¶ 17.

{43} Investigating the second question in *Terry*, we emphasized that "it is not a judicial function to set appropriate limitations periods." *Id.* Instead of creating our own applicable period, we briefly surveyed other legislatively-drawn periods. *Id.* A period as short as a single year for certain causes of action, we observed, might survive constitutional scrutiny, when "justified by specific considerations." *Id.* But where "the Legislature has not specified a shorter reasonable period of limitations" for the specific kind of action before us, we added, our task is "to apply the period provided by the applicable" background statutes of limitations. *Id.* And thus the *Terry* result was straightforward: because the construction-defect repose provision at issue in *Terry* gave no specific limitations guidance and because the *Terry* plaintiffs' claims were actions for wrongful death and personal injury, we simply applied the legislatively-prescribed periods for wrongful death and personal injury causes of action, much as other courts had done at the time. *Id.*; *see Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 716 (Ohio 1987) (applying background malpractice limitation period in place of constitutionally problematic medical malpractice provision); *McMacken v. State*, 320 N.W.2d 131, 139 (S.D. 1982) (applying background personal injury limitation period in place of constitutionally

27

problematic construction defect provision), *overruled on other grounds by Daugaard v. Baltic Co-op. Bldg. Supply Ass'n*, 349 N.W.2d 419 (S.D. 1984); *Hunter v. School Dist. of Gale-Ettrick-Trempealeau*, 293 N.W.2d 515, 522 (Wis. 1980) (affirming court of appeals decision applying background limitation period in place of more specific period with constitutionally problematic application).

{44} In *Terry*, because both statutory background provisions established limitations periods of three years from the time of accrual and the plaintiffs' claims had accrued approximately three months before expiration of the ten-year repose period for construction defect claims, application to the plaintiffs' claims added two years and nine months to the effective limitations period remaining under the construction-defect provision. 1982-NMSC-047, ¶¶ 9, 17. Application of those background statutory provisions had the effect of giving the *Terry* plaintiffs adequate time to file and the additional effect of treating similarly all prospective plaintiffs for whom actions accrue before the end of the period of repose. While neither effect merited mention in *Terry*, I suggest the result should guide our analysis today and in the future.

{45} In early cases examining the effect of NMSA 1978, Section 41-5-13 (1976), we had no trouble with, and no objection to, application of the basic *Terry* principles. *See, e.g., Garcia ex rel. Garcia v. La Farge*, 1995-NMSC-019, ¶¶ 34-37, 119 N.M.

28

532, 893 P.2d 428; *Crumpton v. Humana, Inc.*, 1983-NMSC-034, ¶ 5, 99 N.M. 562, 661 P.2d 54. In *Crumpton*, for example, where a cause of action had accrued on the date of alleged malpractice and the plaintiff filed suit more than three years after the date, we marshaled both Section 41-5-13 and the general personal injury limitations period in support of a conclusion the plaintiff's suit was time-barred. *See Crumpton*, 1983-NMSC-034, ¶ 5. The statutes read in tandem, we concluded, "clearly indicate that the statute of limitations" for purposes of these causes of action "commences running from the *date of injury* or *the date of the alleged malpractice*." *Id.* (emphasis in original). The most probable reason for application of the general personal injury limitations period was clear: we were reluctant to impose our own background rule in the event Section 41-5-13 could not provide the rule for decision under the circumstances.

{46} We revisited the question of the applicable limitations period under Section 41-5-13 again in *Garcia*, where we explicitly adopted and applied the two-step *Terry* inquiry for claims arising under the Medical Malpractice Act (MMA), NMSA 1978, § 41-5-1 to -29 (1976, as amended through 2015). *See Garcia*, 1995-NMSC-019, ¶¶ 29-37. We observed that Section 41-5-13 incorporates functions of both repose and limitation, much like the construction-defect provision at issue in *Terry*. *Garcia*, 1995-NMSC-019, ¶ 14. We reiterated that, for purposes of the limitation function,

the constitutionality of the provision would turn on the reasonableness of the time provided for pursuit of existing causes of action. *Id.* ¶ 34. Any constitutionally-appropriate limitations period, we noted, " 'must proceed on the idea that the party has full opportunity afforded him to try his right in the courts.' " *Id.* ¶ 33 (quoting *Wilson v. Iseminger*, 185 U.S. 55, 62 (1902)).

{47} Faced with a plaintiff in *Garcia* whose claim accrued eighty-five days before the three-year period expired, we observed, much as we had in *Terry*, that a statutory provision allowing "an unreasonably short period of time within which to bring an accrued cause of action violates the Due Process Clause of the New Mexico Constitution." *Garcia*, 1995-NMSC-019, ¶ 36. That the remaining effective limitations period for various potential claims arising under Section 41-5-13 was unreasonably short was unquestioned because the potentially effective period would have been unreasonably abbreviated for any "claim accruing near the end of the limitations period." *Garcia*, 1995-NMSC-019, ¶ 36.

{48} Having concluded application of the remaining limitations period under Section 41-5-13 was constitutionally problematic, we turned to the second *Terry* inquiry of what limitations period should appropriately govern the plaintiff's claims. *Garcia*, 1995-NMSC-019, ¶ 37. In answering that question, we relied on *Terry* exclusively, noting, as we had in *Terry*, that while a court "may determine that the

30

limitations period selected is unreasonably short," "it is generally a matter for the legislature to establish limitations periods." *Garcia*, 1995-NMSC-019, ¶ 37. And because the Legislature had not offered some other specific limitation period in the MMA, we concluded, much as we had in *Terry*, that the background three-year rule for personal injury actions, running from the date of accrual, would govern the plaintiff's claims and, as in *Terry*, would have the effects of adding significant time to the limitation period remaining under the repose provision (approximately two years and ninth months) and treating similarly all claimants for whom causes of action accrue prior to the end of the repose period. *Garcia*, 1995-NMSC-019, ¶ 37.

{49} Our *Cummings* case came just a year after *Garcia*, and in *Cummings* we again explained Section 41-5-13 incorporates functions of both repose and limitation. *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶¶ 47-48, 121 N.M. 821, 918 P.2d 1321. And in lieu of explicitly invoking the two-step *Terry–Garcia* analysis, we explained that the *Cummings* plaintiff could not benefit from our standard due process-based limitations analysis because she had failed to "exercise diligence when she first learned she had been misinformed about the mass in her lung" by the defendant. *Cummings*, 1996-NMSC-035, ¶ 57. Our analysis emphasized a lack of diligence. But diligence aside, *Cummings* can be simply understood as yet another application of the two-step *Terry–Garcia* analysis. Section

31

41-5-13, we concluded, left various potential claimants an unreasonably abbreviated period of time within which to pursue causes of action, and thus *Terry* and *Garcia* required that we look to the relevant background rule. *Cf. id.* ¶ 55 (quoting *Garcia*, 1995-NMSC-019, ¶ 26). The *Cummings* action was an action for personal injury, and thus the three-year personal injury period applied. *See Garcia*, 1995-NMSC-019, ¶ 37. And that was dispositive: because the *Cummings* action had accrued on February 23, 1990, the three-year legislative background rule supplied by the *Terry–Garcia* analysis would have given the plaintiff until February 23, 1993, to file. But having waited to sue the defendant until December 7, 1993, the plaintiff was too late, at nearly ten months beyond expiration of the background rule. *Cummings*, 1996-NMSC-035, ¶ 57.

{50} Despite the straightforward teachings of *Terry*, *Garcia*, and *Cummings*, and despite decades of legislative acquiescence to those decisions, we got off track in *Tomlinson v. George*, 2005-NMSC-020, 138 N.M. 34, 116 P.3d 105. *Cf. Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988) (observing "[j]udicial interpretation and application, legislative acquiescence, and the passage of time have removed any doubt" regarding future application of past interpretive decisions). We avoided legislating in these earlier three cases, and a legislatively-prescribed background rule supplied the appropriate rule for decision in each case. Glossing over that history, we

32

pronounced in *Tomlinson* that *Cummings* had concluded "that one and one-half years is a constitutionally reasonable period of time within which to file a claim." *Tomlinson*, 2005-NMSC-020, ¶ 23. But of course, we put it very differently in *Cummings* stating that:

> At that time there was still about a year and a half before the statute of repose on her malpractice claim expired. Nevertheless, *she sat on her rights* and did not file any claim for more than two years, on July 27, 1992. By that time, almost four years had passed since the 1988 act of malpractice. She did not sue X-Ray Associates until December 7, 1993, more than five years after the act. Cummings *lost her medical malpractice claim through her own lack of diligence*.

*Cummings*, 1996-NMSC-035, ¶ 57 (emphasis added). Why that one and one-half year period received the transposition it did in *Tomlinson* was and remains unexamined. Regardless, it is sufficient for our purposes today to note we refused to impose our own limitation period in *Terry*, and in *Garcia*, and in *Cummings*, because the statutory background rule had supplied the rule for decision instead. But in *Tomlinson*, we undid the analyses of those cases and crafted our own rule, concluding "two years and eight months is a constitutionally reasonable period of time within which to file" a claim. 2005-NMSC-020, ¶ 24.

{51} Faithful application of the *Terry–Garcia* analysis would have required the opposite result. The *Tomlinson* plaintiff's claim was again one for personal injury, and the three-year personal injury limitation period should have governed, much as

33

it had in *Terry*, 1982-NMSC-047, ¶ 17, in *Garcia*, 1995-NMSC-019, ¶ 37, and in *Crumpton*, 1983-NMSC-034, ¶ 5. And application of the legislatively-prescribed three-year period suggests the *Tomlinson* plaintiff was timely: the claim accrued on December 24, 1996, and she filed an application with the statutorily-created medical review commission, which tolls the running of the limitation period, on December 13, 1999. 2005-NMSC-020, ¶¶ 4-5; *see* NMSA 1978, § 37-1-8 (1976).

{52}    Two obvious objections to that outcome in *Tomlinson* would have arisen; both, however, had been asked and answered in our prior cases. Filing outside the three-year window provided by Section 41-5-13 seems at odds with the basic statutory language—but as we noted in *Terry* and again in *Garcia*, "considerations of fairness implicit in the Due Process Clauses of the United States and New Mexico Constitutions dictate that when the legislature enacts a limitations period it must allow a reasonable time within which existing or accruing causes of action may be brought." *Garcia*, 1995-NMSC-019, ¶ 36; *accord Terry*, 1982-NMSC-047, ¶¶ 14-15. And two years and eight months may have seemed a generously long period for pursuit of the claim, but the statute itself allows three years for early accruing claims; the background period for personal injury actions allows three years; we had applied the background period before without objection from the Legislature; and as we have repeatedly explained, "it is not a judicial function to set appropriate limitations

periods." *Terry*, 1982-NMSC-047, ¶ 17; *see Garcia*, 1995-NMSC-019, ¶ 37; *accord Feldhake v. City of Santa Fe*, 1956-NMSC-079, ¶ 33, 61 N.M. 348, 300 P.2d 934, ("The courts cannot legislate . . . .").

{53} We could reject, narrow, or find another justification for *Tomlinson*, but my concern here is that the majority's recap of the case law puts this history aside to Cahn's great detriment, and this new twelve-month rule entangles and imperils fundamental separation-of-powers jurisprudence. *See, e.g., De Graftenreid v. Strong*, 1922-NMSC-031, ¶ 8, 28 N.M. 91, 206 P. 694 ("Courts cannot read into an act something that is not within the manifest intention of the Legislature, as gathered from the statute itself. To do so would be to legislate . . . ."). Despite the *Tomlinson* pronouncement regarding *Cummings*, we have never in this context held, or even concluded, that "eighteen months is a constitutionally reasonable period" for requiring the filing of a claim. Instead, we have asked whether Section 41-5-13 provides an unreasonably abbreviated limitation period for various potential claims and, answering that question in the affirmative, we have moved on to the question of what limitation period should govern for claims accruing before Section 41-5-13 repose applies. The answer was clear in *Garcia*, as it was in *Crumpton*—the legislatively-supplied personal injury limitation period governs those claims where Section 41-5-13 cannot—and it provided the rule of decision for *Cummings*. The

answer is just as clear here, and Cahn should benefit from it. Her claim accrued on September 22, 2008, within the Section 41-5-13 period; given the background personal injury provision of three years, she had until September 22, 2011, to file; and she filed against Berryman on July 9, 2010, well within the three-year deadline imposed by the background provision.

{54} The twelve-month rule the majority adopts raises two concerns. First, in order to create this new rule, the majority overrules *Garcia* but does so sua sponte. Majority Op. ¶ 22. Because no party requested that *Garcia* be overruled and we did not request briefing, we are overturning precedent without the benefit of stare decisis. *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶¶ 33-36 ("Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law" and "[p]articular questions must be considered before overturning precedent."); *see State v. Riley*, 2010-NMSC-005, ¶ 40, 147 N.M. 557, 226 P.3d 656, (Chávez, J., specially concurring, Bosson, J., concurring in part and dissenting in part, Daniels, J., specially concurring) (explaining stare decisis prevents this Court from overruling precedent where the parties have not briefed and specifically argue the relevant factors to be considered before overturning our precedent). Secondly, creation of a new rule constitutes the kind of legislation we said we could not craft in *Terry* and *Garcia.* Thus I would not adopt it here. I

would also decline to apply the rule retroactively, because we cannot know how Cahn's pursuit of her claim would have transpired had she known she had more time available as she encountered expiration of the initial limitations period.  Instead, I would apply the *Terry–Garcia* analysis as we have applied it in the past; and having done that, I would reverse the court of appeals decision and reinstate the conditional verdict of the district court.

**II.	The Statutory Architecture**

{55}	Even were we hesitant to apply the legislatively-supplied three-year background rule despite the applications in *Terry* and *Garcia* and the ensuing decades of legislative acquiescence, I believe the MMA is designed to obviate the problem that plagued Cahn here.  The statutory structure, in other words, suggests claims arising in the posture Cahn's did here need not be subject to the Section 41-5-13 repose.

{56}	The MMA made various changes to the way our courts process medical negligence claims; among those changes was the addition of the Section 41-5-13 repose provision we have given much attention today.  The MMA also established a "medical review commission," the function of which "is to provide panels to review all malpractice claims against health care providers covered by the [MMA]." Section 41-5-14(A). After the requisite review, the panel is tasked with deciding "(1) whether

there is substantial evidence that the acts complained of occurred and that they constitute malpractice; and (2) whether there is a reasonable medical probability that the patient was injured thereby." Section 41-5-20(A)(1)-(2).

{57} This review is required for any claims made against qualifying providers like Berryman; the MMA directs that "[n]o malpractice action may be filed in any court against a qualifying health care provider before application is made to the medical review commission and its decision is rendered." Section 41-5-15. And the review is substantive. An application by a claimant must contain (1) facts, names, dates, and circumstances, "so far as they are known," and (2) a statement authorizing "access to all medical and hospital records and information pertaining to the matter." *Id*. Health care providers involved have reciprocal obligations—they must "answer the application for review," and they must "submit a statement authorizing" the reviewing panel "to obtain access to all medical and hospital records and information pertaining to the matter." Section 41-5-16(B). Eventually, the panel must hold a hearing on the matter; and post-hearing, should the panel conclude it still lacks relevant information for purposes of making the determinations required by statute, the panel "may request that additional facts, records, witnesses or other information be obtained." Section 41-5-19(D). Recognizing the burden this review imposes on the claimant and recognizing the time any review of substance might require, our Legislature built into

38

the MMA a tolling provision which directs that "[t]he running of the applicable limitation period" for these professional negligence claims is tolled while the panel gathers information, reviews, and deliberates. Section 41-5-22.

{58}    The provisions governing this review process are instructive in several ways. The flexibility of the phrase "applicable limitation period" of Section 41-5-22 in the tolling provision and the absence of specific reference to the limitation period of Section 41-5-13 are telling. The Legislature surely knew how to incorporate related provisions by reference, and did so elsewhere in the MMA. *See, e.g.*, Section 41-5-5(A)(2) (making reference to specific provisions in Section 41-5-25). The omission of any mention of Section 41-5-13 in the general language of Section 41-5-22 suggests the Legislature may well have understood multiple limitations periods might govern claims brought under the MMA. And the existence of the tolling provision itself reflects a legislative judgment that Section 41-5-13 is not a standard repose provision—repose periods are typically "fixed" and not to "be delayed by estoppel or tolling." 4 Charles Alan Wright, Arthur A. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1056 (4th ed. 2015); *see also CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014).

{59}    More important still are the MMA's information-seeking provisions. The basic purposes underlying creation of the commission and review suggest the information-

39

seeking provisions were designed to preclude the problem that arose here. The legislative objective in creating these screening panels was, ostensibly, to expedite resolution of claims, with associated goals of reducing the overall costs of processing these claims and promoting judicial efficiency. *See* Jean A. Macchiaroli, *Medical Malpractice Screening Panels: Proposed Model Legislation to Cure Judicial Ills*, 58 Geo. Wash. L. Rev. 181, 186, 240 (1990) ("[A]ll state legislatures that have created screening panels have done so for essentially identical reasons."). These panels, in other words, were created to screen, streamline, and filter claims for the parties and the courts. Efficiency across both levels of review—panel and court—was a prominent goal. And these objectives suggest the timeline regarding identification of Berryman here was (1) exceptional, and (2) not likely the kind of timeline our Legislature intended to proscribe in establishing the Section 41-5-13 repose. Once Cahn had timely filed with respect to Lovelace and some of the other providers here, the screening mechanism should typically have identified any individuals involved—the statutory provisions mandate that both parties authorize access to all relevant information, and the panel has an ongoing obligation to seek any information necessary for making its determinations. In most cases, the year-long search for Berryman in discovery should then have been unnecessary; had the panel encountered the same identification difficulty, a case for estoppel or fraudulent concealment might

have loomed large. And regardless whether those cases could be made, nothing in the statutory provisions suggests the claimant should suffer when the providers and panel fail to satisfy their own identification obligations—the Section 41-5-13 repose is tolled for as long as the screening process takes.

{60} One objection to reliance on the statutory scheme for guidance may be that with the exception of Berryman, none of the other providers were covered providers here. The record does not clearly reveal the status of the other providers for us; were it the case they were all uncovered providers, no screening would have been required until Berryman was identified, and Cahn would not have benefitted from the information-producing apparatus of review. But it would be at odds with the goals of both the MMA and review to suggest the scheme is intended to encourage affiliations between entities avoiding the burdens of qualification under the MMA and contracting providers who gain its protections, while at the same time encouraging the basic relational disorganization, dysfunction, and opacity giving rise to the identification problem here. The point, we have said, is to "encourage more physicians to carry" insurance—not to encourage strategic and opaquely drawn relationships with those not carrying insurance. *Garcia*, 1995-NMSC-019, ¶ 24.

{61} Instead, the basic legislative preference for filtering, and for developing the information relevant to, as many of these claims as possible in review suggests a

legislative understanding that the identification problem and protracted discovery that occurred here should rarely, if ever, arise for qualified providers like Berryman. When those problems do arise and the identification problem is relevant to resolution of the claim, repose is typically tolled. Nothing in the MMA suggests the result should be different for qualified providers when they affiliate with non-qualified providers. *Cf. Grantland v. Lea Reg'l Hosp., Inc.*, 1990-NMSC-076, ¶ 8, 110 N.M. 378, 796 P.2d 599 ("If we require claimants to file in district court at the peril of losing their case before the classification of the health care provider is known, then every claim will be filed in district court as a safety precaution, and the purpose behind the [MMA] . . . will be defeated.").

{62} Based on that architecture and based on the stipulation here of absence of any cost concerns arising from potential frivolity, staleness, questions of causation, or difficulties in establishing misdiagnosis based on negligence, I do not believe we should conclude the Section 41-5-13 repose was designed to apply to the circumstances as they arose here. *Compare Cummings*, 1996-NMSC-035, ¶ 38 (justifying application of repose on grounds that "[c]laims could arise long after memories have faded, parties become unavailable, and evidence is lost").

## III. Due Process and Circumstance-Specific Reasonableness

{63} And most importantly, this new twelve-month rule that is to be applied in every case regardless the circumstances (with potential carve-outs for other exceptional scenarios like fraudulent concealment, which Cahn does not press on appeal here), is inconsistent with the longstanding case law establishing that due process protection requires circumstance-specific investigation before we may extinguish a vested right. *See, e.g.*, *Terry v. Anderson*, 95 U.S. 628, 633 (1877) (considering "all the circumstances"); *Wilson v. Iseminger*, 185 U.S. at 63 (1902) ("[W]hat is reasonable in a particular case depends upon its particular facts."); *Terry*, 1982-NMSC-047, ¶ 16 (examining potential application of limitations periods "under these facts"); *cf. Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) ("This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights.").

{64} Any cause of action that has accrued as Sarah Cahn's has here is a "species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Due process protection, the United States Supreme Court has often explained, generally requires that any deprivation of life, liberty, or property be preceded by notice and an opportunity to be heard in a manner appropriate for "the nature of the case." *Cleveland Bd. of Educ. v.*

43

*Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). In the context of limitations periods, we have explained "that statutes of limitation may be passed where formerly there were none, and existing limitation periods may be reduced while the time is still running," but due process requires that a "reasonable time" be "left for the institution of an action before it is time-barred." *Terry*, 1982-NMSC-047, ¶ 14; *accord Sohn v. Waterson*, 84 U.S. 596, 599 (1873) ("[I]f an action accrued more than the limited time before the statute was passed a literal interpretation of the statute would have the effect of absolutely barring such action . . . . It will be presumed that such was not the intent of the legislature. Such an intent would be unconstitutional."). And we have extended application of that rule, imposing it as "an appropriate general restriction on the Legislature's right to statutorily limit actions"—a right our Legislature has attempted to exercise in Section 41-5-13. *Terry*, 1982-NMSC-047, ¶ 15.

{65} "Reasonable time" in this context has always had an intentionally flexible meaning. The reasonableness determination, the United States Supreme Court long ago observed, must account for "all the circumstances" of a particular case. *Terry v. Anderson*, 95 U.S. at 633. Reasonableness in any given case, in other words, depends "upon its particular facts." *Id.*; *see also Terry*, 1982-NMSC-047, ¶ 16 ("We hold that such an abbreviated period is unreasonable."). It has no "fixed content," and we must

44

evaluate it "as the particular situation demands." *U.S. West Commc'ns v. N.M. State Corp. Comm'n (In re 1997 Earnings of U S West Commc'ns, Inc.)*, 1999-NMSC-016, ¶ 25, 127 N.M. 254, 980 P.2d 37 (citation omitted); *accord Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 246 (1944) ("What is due process in a procedure affecting property interests must be determined by taking into account the purposes of the procedure and its effect upon the rights asserted and all other circumstances which may render the proceeding appropriate to the nature of the case.").

{66}    In the context of the MMA, we have often observed that the due process guarantee requires us to account for all case-specific circumstances; and based on those circumstances, the guarantee may compel us to conclude the MMA's provisions must yield. *See, e.g.*, *Jiron v. Mahlab*, 1983-NMSC-022, ¶ 12, 99 N.M. 425, 659 P.2d 311 ("[W]here the requirement of first going before the Medical Review Commission causes undue delay prejudicing a plaintiff by the loss of witnesses or parties, the plaintiff is unconstitutionally deprived of his right of access to the courts."). Due process therefore, ensures that "claimants who make a good-faith attempt to comply with the [MMA]" are "not [to] be deprived of their day in court by placing form above substance." *Grantland*, 1990-NMSC-076, ¶ 6; *see Otero v. Zouhar*, 1985-NMSC-021, ¶ 22, 102 N.M. 482, 697 P.2d 482, *overruled by Grantland*, 1990-NMSC-076 (concluding claimant had failed to comply with strict requirements

of Act but had done "what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law" (internal quotation marks and citations omitted)). And thus for purposes of evaluating the MMA's limitation function, we have explained that "protecting the defendant is a laudatory goal," but any period imposed "should reflect a policy decision regarding what constitutes an adequate period of time for a person of ordinary diligence to pursue his claim." *Roberts v. Sw. Cmty. Health Servs.*, 1992-NMSC-042, ¶ 26, 114 N.M. 248, 837 P.2d 442 (internal quotation marks omitted).

{67} Our due process reasonableness determination in the limitations context, in other words, has always necessarily incorporated an examination of the claimant's diligence in pursuing a claim. *See Cummings*, 1996-NMSC-035*, ¶ 57 ("Cummings lost her medical malpractice claim through her own lack of diligence."). The concept is neither novel nor antiquated—the diligence inquiry has long featured in due process reasonableness determinations and still does. *See, e.g., Herron v. Anigbo*, 897 N.E.2d 444, 449 (Ind. 2008) ("[T]he plaintiff must file before the statute of limitations has run if possible in the exercise of due diligence."); *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 703 (Tex. 2014) ("[A]n open courts challenge is a due process complaint and requires the party to use due diligence."); *accord Canadian N.*

*Ry. Co. v. Eggen*, 252 U.S. 553, 562 (1920) (explaining "power is in the courts . . . to determine the adequacy and reasonableness" of access to courts, and concluding constitutional problem is avoided when claimant "is given free access to them for a length of time reasonably sufficient to enable an ordinarily diligent man to institute proceedings for their protection"). And even in *Tomlinson*, on which the majority relies today for support for elimination of the case-specific diligence inquiry, we recognized that we accept claims conflicting with the MMA's provisions "in cases involving peculiar facts . . . and when a good faith effort has been made to comply with the Act." 2005-NMSC-020, ¶ 22 (internal quotation marks omitted). For this reason, I disagree with the majority that injecting our judgment to decide how much additional time to grant claimants with late accruing action is to adopt statute of time limitations from other jurisdictions. Majority Op ¶¶ 24- 24. And I would answer the question "How much additional time, exactly, is Cahn entitled?" by looking at the specific facts in Cahn's case.

{68}    Resolution of the traditional diligence inquiry given Cahn's facts is straightforward. By September 2008, two years after Cahn had been misdiagnosed by Berryman, she had relocated to Jackson, Wyoming, and she was still none the wiser. On September 19, 2008, she underwent an annual pap smear and discussed her chronic pelvic pain with a new Wyoming doctor. A copy of her original radiology

47

report was sent to the new physician's office, and she was promptly scheduled for a CT scan on September 22, 2008, three days after her initial visit. Her new scan revealed "extensive abnormality in the pelvis," which was characterized as "highly suspicious for an ovarian malignancy." In the next few weeks, she traveled from Wyoming to New York's Memorial Sloan-Kettering Cancer Center for confirmation of the diagnosis and underwent extensive surgery soon after. Her diagnosis was "metastatic serous borderline tumor of the ovary," and because the tumor had been incorrectly diagnosed at initial discovery, the cancer had progressed from stage I to stage IIIC, substantially decreasing her chances of remedy. On October 15, 2008, she underwent a total abdominal hysterectomy, a bilateral salpingo-oophorectomy, a pelvic and para-aortic node dissection omentectomy, and she was fitted with an intraperitoneal catheter. She remained in New York under the care of her parents for approximately eight months.

{69} Quickly recognizing she had been misdiagnosed, Cahn went to work—as she recuperated in New York—to uncover the identity of Berryman, who had made the error two years earlier. Within twelve days of that massive corrective surgery on October 15, she was sending records requests. Between October 27, 2008, and November 3, 2008, she sent at least eight requests for information to Lovelace Women's Hospital, Lovelace Westside Hospital, and ABQ Health Partners, in pursuit

48

of Berryman's name. None of the records she received in response made note of her August 2006 visit or Berryman's identity.

{70} In the next month, sensing she might have a viable malpractice claim, she retained—again from New York—Albuquerque counsel to assist with development of what at that point could only have appeared a complex case. She indicated to her Albuquerque attorneys she thought she remembered the date of the relevant 2006 appointment with Berryman, but she could not remember his name. Cahn's attorneys investigated the records she had already received in response to her initial requests, and they sought to supplement the information over the next two months with new requests to all three participating facilities for Cahn's "complete medical chart" and any applicable itemized billing statements covering the period from May 17, 2006, through the time of the requests. All told, Cahn and her attorneys sent the provider entities at least sixteen distinct records requests. Eventually, as a result of her investigation, Cahn discovered she had been assigned three separate medical records numbers in the Lovelace Sandia Health System, which was highly unusual for Lovelace patients; nonetheless, Berryman remained unnamed.

{71} Due at least in part to that unorthodox recordkeeping, Berryman's identity remained a mystery to Cahn and her counsel despite several months of active investigation. Recognizing the Section 41-5-13 limitation period was nearing an end,

49

Cahn, on April 10, 2009, timely filed a district court action, naming the various provider identities she had been able to uncover and adding a placeholder physician John Doe defendant until Berryman could be identified. Cahn's attorneys actively continued to seek Berryman's identity in the district court proceeding—but discovery, experience shows, is rarely quick or clean. Finally, discovery responses received on July 1, 2010 revealed Berryman's name. Days later, on July 6, 2010, Cahn, noting the long and protracted "concerted efforts" she had made to uncover Berryman's identity, sought to amend her complaint to add Berryman in place of the Doe defendant. The district court, finding Cahn's contentions "well taken," granted her leave, and on July 9, 2010 Cahn filed her amended complaint naming Dr. Berryman. Berryman then moved for summary judgment on the ground Cahn's amended complaint was untimely under Section 41-5-13. But the district court, having reviewed this extensive history of Cahn's case, explained our due process case law compelled a conclusion that the Section 41-5-13 period could not bar her claims, and denied the motion.

{72} That record is sufficient to establish Cahn's diligence, and it is thus sufficient to allow us to conclude, as the district court did, that *any* period shorter than the twenty-one months that elapsed between accrual and filing with respect to Berryman would have been unreasonably abbreviated under the circumstances. This was not

50

a case where Cahn "sat on her rights" and failed to "file any claim for more than two years." *Cummings*, 1996-NMSC-035, ¶ 57. And it was clearly not a case where she "knew of her cause of action and had over two years and eight months during the statutory period in which to file her claim." *Tomlinson*, 2005-NMSC-020, ¶ 28. Because it is important to compare the majority rule to Cahn's timeline, I also include a pictorial representation at the end of my dissent as appendix B.

{73} Even Berryman concedes the timeline here may be attributable largely to Lovelace; in that case, he asks only that he not be "deprived" of a "substantive right" based on Lovelace's wrongdoing. Whether that argument should prevail may be a question worth revisiting—regardless, it should have no bearing on the diligence determination. *See, e.g.*, *Campbell v. Holt*, 115 U.S. 620, 629 (1885) ("We can see no right which the promisor has in the law which permits him to plead lapse of time instead of payment . . . ."). And I note that the majority declines, as do I, as did the district court, to reach the conclusion Cahn "lost her medical malpractice claim through her own lack of diligence." *Cummings*, 1996-NMSC-035, ¶ 57.

{74} So why legislate a new statute of repose of one year? Especially as Justice Chávez states in his special concurrence, "difficulty in identifying which doctor provided treatment" . . . he "cannot agree that in all cases twelve months will be constitutionally adequate." I submit that this is exactly that case and would hold that

51

the ten and one-half months left before the statute of repose expired, was not a reasonable time for Cahn to bring her cause of action. Accordingly, I would not apply the majority's rule here, and I would not apply it as an unflinching rule in any case where, as here, the United States and New Mexico Constitutions require that we consider a case's particular facts.

## IV.    Other Constitutional Concerns

{75}    In addition to the due process concerns it raises, the twelve-month rule gives rise to a host of additional constitutional questions. *See, e.g.*, Restatement (Second) of Torts § 899 cmt. g (Am. Law Inst. 1979) ("The statutory period in [statutes of repose] is usually longer than that for the regular statute of limitations, but, depending upon the designated event starting the running of the statute, it may have run before a cause of action came fully into existence. This may well raise constitutional problems."). We have addressed some of the constitutional questions before, and we have generally concluded (1) the repose provision is subject to rational-basis review, and (2) the provision was a reasonable response to the "*perceived* medical malpractice crisis" of the 1970s. *Cummings*, 1996-NMSC-035, ¶ 40 (emphasis in original).

{76}    Justice Chávez's special concurrence highlights those constitutional conclusions we made in *Cummings* and suggests those conclusions must govern the

52

outcome here. But several considerations leave me unconvinced. First, we came to those conclusions at a time when our *Garcia* analysis allowed us to address potentially unconstitutional applications case by case, and that opportunity for remediation has vanished with the advent of today's rule.

{77}     Second, the due process challenge at issue in *Cummings* was one of "fundamental right of access to the courts." *Cummings*, 1996-NMSC-035, ¶ 33. Our analysis of that claim was straightforward: we explained that "[a] plaintiff has no expectancy of a cause of action that has been legitimately denied by the legislature before it accrues." *Id.* And analyzing a cause of action accruing after the statutory period has expired, we added that "where there is no cause of action, a plaintiff cannot claim they have been denied access to the courts." *Id.* In other words, we concluded, "no right has accrued," and thus there was no need to further examine the challenge. *Id.* But here, as I have explained, the posture is quite different—everybody agrees Cahn's cause of action had accrued before repose set in, and nobody disputes that a cause of action that *has* accrued constitutes a species of property entitled to due process protection not given significant attention in *Cummings*. *See Logan v. Zimmerman Brush Co.*, 455 U.S. at 428 (1982); *accord Cummings*, 1996-NMSC-035, ¶ 33 ("Since no right has accrued, it is moot to question whether there has been a denial of a fundamental right to vindicate that right in

53

court."). That basic due process difference suggests the constitutional analysis may be quite different for plaintiffs whose claims accrue before the statutory period has run than for those whose claims accrue later—but that question is clearly not before us today.

{78} Third and finally, *Cummings* featured only limited analysis regarding the specific variant of equal protection challenge that might allow the plaintiff with the latent injury (and thus a late-accruing claim) to prevail, and it is not clear why we addressed that equal protection question in the first instance, given our conclusion the injury had not been latent. *See Cummings*, 1996-NMSC-035, ¶ 57 (explaining "there was still about a year and a half before the statute of repose" expired after plaintiff had discovered injury). Had the facts been different and actually given rise to the equal protection claim, perhaps our conclusion would have been different, and perhaps that would have rendered moot any concerns that our due process case law requires a different analysis for a plaintiff whose claim accrues before the statutory period expires. As at least one commentator has observed, "every court that has spoken with any clarity on the issue has ultimately concluded that victims of misdiagnosis of diseases with long latency periods" may well be subject to, and benefit from, a different analysis. *See* Peter Zablotsky, *From a Whimper to a Bang: The Trend Toward Finding Occurrence Based Statutes of Limitations Governing*

*Negligent Misdiagnosis of Diseases With Long Latency Periods Unconstitutional*, 103 Dick. L. Rev. 455, 495 (1999). Those courts have frequently found unconstitutional deprivation for the plaintiff in the long latency scenario, on equal protection grounds, on due process grounds, and on related state constitutional grounds. *Id*. But as I have noted, those questions are not before us today, and we need not address them here.

{79} Instead, I note more generally that numerous courts have found constitutional challenges compelling in the medical malpractice context, and it may be that future application of today's rule requires us to revisit some of these arguments and their applications. *See generally* Zablotsky, 103 Dick. L. Rev. 455; *see also, e.g.*, *McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 19 (Ky. 1990) ("While there may be certain salutary effects from limiting to five years the period in which suits can be brought, these cannot outweigh a plaintiff's constitutional right to have his or her day in court."); *Lee v. Gaufin*, 867 P.2d 572, 587 (Utah 1993) ("[T]he dominant causes of increased health-care costs were factors other than increased malpractice insurance premiums."); *DeYoung v. Providence Med. Ctr.*, 960 P.2d 919, 924 (Wash. 1998) (en banc) ("Plaintiff next contends that the classification of medical malpractice claims which are subject to the eight-year statute of repose does not bear a rational relationship to the purpose of the statute.

We agree."); *cf. Pickett v. Brown*, 462 U.S. 1, 18 (1983) (concluding two-year limitations period was "not substantially related to the legitimate state interest in preventing the litigation of stale or fraudulent claims").

{80} But our case law suggests the better course is to steer clear of these constitutional shoals—"we must construe a statute . . . so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *State v. Pangaea Cinema, LLC*, 2013-NMSC-044, ¶ 23, 310 P.3d 604 (internal quotation marks and citation omitted). Because *Terry* and *Garcia* have given us a longstanding rule for decision here that obviates at least some of the relevant constitutional concerns, I cannot conclude we have good reason to adopt the majority rule today and embark on a new and uncharted constitutional collision course.

**V.    Conclusion**

{81} It may be simple to impose rigid time restrictions for claims that accrue within the three-year statute of repose to eliminate the legal wrangling that is present with the complexity of these types of cases. But it is inconsistent with the spirit of due process to take this simple route. We must consider time, place, circumstances, and many other factors in the pursuit of fundamental fairness, despite how nebulous the concept may be. A fact-based approach would provide the fairness the Due Process Clause seeks to protect, while also changing the focus of the legal analysis to whether

a plaintiff was sufficiently diligent. Accordingly, I would not apply the majority's rule here, and I would not apply it as an unflinching rule in any case where, as here, the United States and New Mexico Constitutions require that we consider a case's particular facts. I respectfully dissent.

_____

**PETRA JIMENEZ MAES, Justice**



Appendix A

58



Appendix B